1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  | MATTHEW LLOYD CHANDLER, | Civil No.   14-0103 GPC (BGS)
12  |                    Petitioner,
13  |          vs. | **REPORT AND RECOMMENDATION RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS**
14  |
15  | STU SHERMAN, Warden,
16  |                    Respondent.

17

18  **I.    INTRODUCTION**

19      Petitioner Matthew Lloyd Chandler, a state prisoner proceeding pro se and in

20  forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254,

21  challenges his conviction in San Diego County Superior Court Case No. SCD227785

22  for assault with a deadly weapon and burglary as well as weapons enhancements.  (Pet.

23  at 6-38, ECF No. 1 (Pet.).)[1]  The Court has reviewed the Petition, the Answer and

24  Memorandum of Points and Authorities in Support of the Answer, the Traverse, the

25  lodgments, the record, and all the supporting documents submitted by both parties.  For

26  the reasons discussed below, the Court recommends the Petition be **DENIED**.

27  _____

28      [1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

## II.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal opinion:

A. *The People's Case*

1. *"Other crimes" evidence (Evid. Code § 1101(b))*

Over pretrial objection, the prosecution presented evidence under Evidence Code section 1101(b) (discussed more fully, *post*) that Chandler committed theft in early 2009 at a Vons store.

2. *May 18, 2010 burglary and grand theft of personal property (counts 5 & 6)*

Earl Hochdanner testified that at around 9:00 p.m. on May 18, he was working as a shift supervisor at a CVS store.  Hochdanner walked into the storage area in the back of the store through a swinging door on which there was a sign reading, "Employees Only Beyond This Point." Hochdanner saw Chandler standing in the open doorway of the restricted liquor cage, which is a large wooden cage wrapped in chicken wire with a locked wooden door where cigarettes, liquor, and electronics were stored.  The liquor cage door had a hinge that made the door shut automatically.  The door handle locked automatically and, although the door could be opened from the inside without a key, a key was needed to open the door from the outside.  Hochdanner observed that the liquor cage light was on and the door was open.  The liquor cage door had been locked earlier and the light had been turned off.

When Chandler saw Hochdanner, Chandler first tried to close the liquor cage door, but then opened it back up again.  Hochdanner testified that Chandler was wearing a large black backpack that "looked full." Hochdanner asked Chandler what he was doing in the liquor cage. Chandler replied that he was looking for the bathroom and that someone told him the bathroom was in the back.  Hochdanner thought Chandler's statement was false because a store employee would have told Chandler the bathrooms were located in the pharmacy area.

Hochdanner then asked Chandler what he had taken, and Chandler responded that he had not taken anything.  When Hochdanner asked whether he could look in Chandler's backpack, Chandler said, "Fuck no." Hochdanner asked Chandler to leave the store and then walked him out of the store and watched him leave.

Hochdanner testified he went back to the liquor cage to see if anything was missing and then told his manager he had caught someone in the liquor cage. Hochdanner's manager reminded him that an inventory had just been taken of the items in the liquor cage. Hochdanner checked the cigarettes and determined that 30 cartons of cigarettes, totaling about $1,500, were missing.

Hochdanner inspected the liquor cage to try to determine how Chandler had opened the door and found that the chicken wire had been clipped next to the door frame about a foot and a half below the level of the door handle. The clipped wires looked like they had been pulled apart. Hochdanner put his arm through the hole in the chicken wire and was able to reach the door handle and open the door.

Hochdanner indicated that the store was equipped with a video surveillance system, but the only camera in the rear area of the store behind the swinging doors was by the receiving door "about 100 or 200" feet away from the liquor cage and so nothing that happened inside the cage would have been video recorded. Hochdanner testified that "[w]e had video of the suspect walking in the store and walking out of the store with me." A video clip showing Chandler in the store that night was played for the jury.

3. *June 3, 2010: Assault with a deadly weapon (counts 1 & 2), burglary (count 3), and making a criminal threat (count 4)*

David Beeler testified that at around 4:50 p.m. on June 3, he was working as the assistant manager at the same CVS store. He went into the back storage room, opened the liquor cage with his key, turned on the light, and saw Chandler lying on his stomach inside the liquor cage. Beeler saw a few cartons of cigarettes and a beer on the floor next to a backpack, about a foot away from Chandler. As Beeler was standing in the doorway holding the door open, Chandler reached for the backpack and stood up.

Chandler told Beeler, "I don't have anything," and opened the backpack. Beeler recognized Chandler from a photograph of Chandler taken at the store entrance on the night of the prior incident. The store manager had shown the photograph to Beeler and told him to "keep an eye out."

As Beeler was standing in the liquor cage doorway, Chandler walked toward him to get out of the cage, saying, "You ain't got me. You don't got anything on me. You can't do anything." Beeler put his hand out to stop Chandler from leaving and said, "Wait a minute. Wait, wait, wait. You're the guy from last time." Chandler then reached into the front right pocket of his pants, pulled out a standard box cutter knife, and swung it at Beeler's neck. Beeler testified that the box cutter came within about three inches of his neck. Beeler fell back "in shock" out of the liquor cage doorway, and Chandler walked out of the liquor cage and out through storage room doors into the store.

Beeler stated he followed behind Chandler and tried to call 911 from his cell phone but was flustered and misdialed a couple of times. As they passed the photo lab counter, Beeler, who was about 10 feet behind

Chandler, yelled out to the photo clerk, Christina Liebelt, that Chandler tried to stab him and for her to call 911. Beeler testified he had a hard time speaking when he spoke to her, and she thought he was joking. Chandler, who became angry, stopped walking and said something like "I ain't got nothing on you" and then continued walking with Beeler again following him. Beeler testified that as they exited the store through the front entrance, Chandler told him, "You ain't nothing to me. I'll kill you. No problem." Chandler walked across a parking lot toward a bus stop with Beeler following him. Before they reached the bus stop, Chandler turned around, took the box cutter out of his pocket again, and told Beeler something to the effect that he had no problem killing Beeler, and Beeler was nothing to him. Beeler testified that Chandler threatened him with the box cutter he had used in the liquor cage, but this time it only came within about a foot and a half of Beeler's neck.

David Salo, a CVS cashier, testified he was working at the courtesy booth in the front of the store that day when he saw Beeler and Chandler walk past his register. According to Salo, Beeler and Chandler were "in a heated conversation" and a "confrontation of some type" appeared to be going on. Chandler was trying to get out of the store and was aggressively pushing Beeler. Salo testified that Beeler "was trying to delay [Chandler] until the police got there." Chandler told Beeler in a threatening way, "Get out of my way," and Beeler said, "No, you're not going." Salo also heard Chandler make some threatening comment like "I'll hurt you." Chandler was gripping something in his hand, which Salo thought was a box cutter.

Salo followed Beeler and Chandler after they left the store, but he did not see Chandler brandish a weapon toward Beeler. Salo saw Beeler come back. Salo then got into his truck and followed Chandler. Salo stopped a police officer and gave information about the incident.

At around 5:00 p.m. that day, after being flagged down by a CVS employee in the vicinity of the CVS store, San Diego Police Officer Kristopher Spencer found Chandler a couple of blocks away. After Chandler started to walk away, Officer Spencer and another officer drew their service weapons and ordered Chandler to stop and get down to the ground. Officer Spence took Chandler into custody "as a detention" because he fit the description of the suspect. Chandler had a plain black backpack with shoulder straps, which Officer Spencer impounded.

Officer Spencer searched the immediate area and in some small hedges about 15 feet from where Chandler dropped to the ground, the officers found a box cutter with an angled retractable blade and a pair of wire cutters, which were also impounded.

### B. *The Defense Case*

Chandler did not testify. Christina Liebelt, the CVS employee who was working in the photo lab of the store on June 3, testified for the defense. She testified that during the incident on that date Beeler told her to call 911. Initially, she thought Beeler was kidding "because he has a dry sense of humor" and makes jokes. Beeler again asked her to call 911 and said something like "[h]e tried to kill me" or "[h]e tried to cut me." This prompted Liebelt to call 911. Liebelt testified she recognized

Chandler from a picture she had seen of him.  She stated she did not hear Chandler, who was trying to leave the store, make any threats.

San Diego Police Officer Daniel Vaquero testified that he investigated the June 3 incident and interviewed Beeler.  Officer Vaquero testified he did not collect any video from the store because "there was no video of the assault in the back cage or in the middle of the store."  When asked whether a second alleged attack took place near Liebelt's photo counter, Officer Vaquero replied, "I didn't say that it happened during [*sic*] the photo counter, sir."  At the defense counsel's request, Officer Vaquero refreshed his memory by reading the report he prepared and the indicated that Beeler had told him the second attack took place near the photo counter.

On cross-examination, Officer Vaquero stated that Beeler was upset, red, and shaking when the officer talked to him, and he had to console Beeler by saying, It's ok.  You're okay.  You're not hurt, and I know this is hard, but it's good that you're reporting it."

(Lodgment No. 11 at 3-11.)

## III.   PROCEDURAL BACKGROUND

On October 28, 2010, the San Diego County District Attorney's Office filed an amended information charging Matthew Lloyd Chandler with two counts of assault with a deadly weapon by means of force likely to produce great bodily injury (counts one and two), a violation of California Penal Code (Penal Code) § 245(a)(1), two counts of burglary (counts three and five), a violation of Penal Code § 459, one count of making a criminal threat (count four), a violation of Penal Code § 422, and one count of grand theft of personal property (count six), a violation of Penal Code § 487(a).  (Lodgment No. 2 at 0009-11.)  As to counts one and two, the amended information also alleged Chandler had personally used a deadly weapon, within the meaning of Penal Code § 1192.7(c)(23), and as to counts three and four, the amended information alleged Chandler had personally used a deadly weapon, within the meaning of Penal Code § 12022(b)(1).  (*Id.*)  In addition, the amended information alleged Chandler had suffered thirteen prior felony convictions which rendered him ineligible for probation, within the meaning of Penal Code § 1203(e)(4), eight prior convictions for which he had served a prison sentence, within the meaning of Penal Code §§ 667.5(b) and 668, one serious felony prior conviction, within the meaning of Penal

1   Code §§ 667(a)(1), 668 and 1192.7(c), and one prior "strike" conviction, within the
2   meaning of Penal Code §§ 667(b) through (i), 1170.12, and 668.  (*Id.*)

3       Following a jury trial, a jury found Chandler guilty of counts one, three, and five,
4   and not guilty of counts two, four, and six.  (*Id*. at 0214-19.)  Chandler admitted he had
5   suffered the prior convictions as alleged.  (Lodgment No. 1, vol. 3 at 500-06.)  He was
6   sentenced to fourteen years and four months in state prison.  (*Id.* at 0167-68.)

7       Counsel for Chandler filed a direct appeal of his conviction in the California
8   Court of Appeal, Fourth Appellate District, Division One.  (Lodgment No. 4.)  While
9   that appeal was pending, Chandler filed a petition for writ of habeas corpus in the San
10   Diego Superior Court, which the court denied because it lacked jurisdiction.
11   (Lodgment No. 3.)  Chandler then filed a document he entitled "Supplemental Brief"
12   and a habeas corpus petition in the state appellate court.  (Lodgment Nos. 5-6.)  The
13   state appellate court consolidated the direct appeal and the habeas corpus petition.
14   (Lodgment Nos. 8-9.)   The state appellate court ultimately affirmed Chandler's
15   convictions in an unpublished written opinion.  (Lodgment No. 11.)  Chandler then
16   filed a Petition for Review in the California Supreme Court, which denied the petition
17   without citation of authority.  (Lodgment Nos. 12-13.)

18       Following that denial, Chandler filed a second petition for writ of habeas corpus
19   in the San Diego Superior Court.  (Lodgment No. 14.)  The superior court denied the
20   petition in a written opinion.  (Lodgment No. 15.)  Chandler then filed a petition for
21   writ of habeas corpus in the California appellate court.  (Lodgment No. 16.)  The
22   appellate court denied the petition in a written, unpublished opinion.  (Lodgment No.
23   17.)

24       On January 15, 2014, Chandler filed a petition for writ of habeas corpus pursuant
25   to 28 U.S.C. § 2254 in this Court [ECF No. 1].  Respondent filed an Answer and
26   Memorandum in Support of the Answer on March 11, 2014 [ECF No. 8].  Chandler
27   filed a Traverse on June 23, 2014 [ECF No. 17].

28   / / /

## IV.   DISCUSSION

Chandler raises five claims in his Petition.  First, Chandler argues the state trial judge improperly excluded evidence of victim Beeler's employment records and the CVS employee manual.  Second, Chandler contends the state trial judge improperly permitted the prosecution to introduce evidence of "other crimes" he had committed. Third, Chandler claims the prosecutor committed misconduct. Fourth, Chandler argues his counsel was ineffective.  And fifth, Chandler contends the cumulative effect of all the errors that occurred at his trial rendered his trial fundamentally unfair.  (Pet. at 6-38.)  Respondent argues the state court's resolution of the claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 25-54 (Answer), ECF No. 8.)  Respondent also argues that Chandler's claim regarding the erroneous admission of evidence (claim two) is not a cognizable federal claim.  (*Id.* at 24-28.)

A.  *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

/ / /

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

/ / /

B. *Exclusion of Evidence*

In claim one, Chandler contends the state court improperly excluded evidence of Beeler's employment records and portions of the CVS employee manual that Beeler violated by pursuing Chandler. (Pet. at 6-15.) Respondent contends the claim does not state a federal question, and, in the alternative, the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer at 25-35.)

Chandler raised this claim in the petition for review he filed in the California Supreme Court. (Lodgment No. 12.) The state supreme court denied the petition without citation of authority. (Lodgment No. 13.) Accordingly, this Court must "look through" to the state appellate court's opinion as the basis for its analysis.

As Respondent correctly argues, to the extent Chandler is arguing the state court improperly excluded the information about Beeler's employment record and the CVS employee manual under state law, he is not entitled to relief. Federal habeas relief is not available for alleged violations of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Clearly established federal law, however, holds that the right to present evidence and witnesses is essential to due process and is guaranteed by the compulsory process clause of the Sixth Amendment. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Dunham v. Deeds*, 954 F.2d 1501, 1503 (9th Cir. 1992). The Ninth Circuit has noted, however, that "[t]he defendant's right to present evidence . . . is not absolute. *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983); *see also Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990). The exclusion of defense evidence is error only if it renders the state proceeding so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 67.

The Ninth Circuit has identified five factors that should be considered when deciding whether a court's exclusion of defense evidence violates the constitution: "(1)

the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the defense." *Tinsley*, 895 F.2d at 530; *see also Duhaime v. Ducharme*, 200 F.3d 597, 600 (2000) (finding that "[Ninth Circuit] cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law. . . .") The importance of the evidence must then be balanced against the state's interest in exclusion. *Tinsley*, 895 F.2d at 530. To overcome the state's strong interest in the administration of its trials, the circumstances of the exclusion must be "unusually compelling." *Perry*, 713 F.2d at 1452.

### i. *Beeler's Employment Records*

Defense counsel sought to admit evidence that Beeler was fired from his job at another CVS store about five months after the June 3 incident involving Chandler. (Lodgment No. 1, vol. 2 at 41-43; Lodgment No. 2 at 0027-28.) Beeler was fired when a customer who complained about service asked for Beeler's name and Beeler threw his identification down on the counter in front of her and told her she was not welcome in the store any more. (Lodgment No. 1, vol. 2 at 40-41.) Defense counsel asked to conduct an Evidence Code § 402[2] hearing to determine whether Beeler had touched the customer in any way during the altercation; counsel argued such evidence would support Chandler's claim that Beeler had physically blocked his exit from the store. (*Id*. at 42-43.) The court concluded the evidence was irrelevant. (*Id.* at 43.) The next day, defense counsel asked the court for guidance on whether, depending on Beeler's testimony, the circumstances of his firing would become relevant. (*Id.* at 90.) The court reiterated its ruling that the circumstances of Beeler's firing were irrelevant, but if Beeler were to testify in contradiction to the facts surrounding his termination,

/ / /

---

[2] Evidence Code § 402 provides for a hearing "to determine the question of the admissibility of evidence out of the presence or hearing of the jury." (Cal. Evid. Code § 402 (West 2011 Desktop Edition).

such as stating "I am always polite to customers," the evidence might come in as impeachment. (*Id.* at 91-92.)  The state court upheld the trial court's decision:

> We conclude the court acted within the broad scope of its discretion when it excluded as irrelevant the evidence proffered by the defense regarding the termination of Beeler's employment.  Chandler sought to introduce evidence that Beeler was terminated in November 2010, almost six months after the June 3 incident at issue in this case, based on an incident at a different CVS store.  That incident was so dissimilar in nature to the June 3 incident at issue in this case that we conclude Chandler had failed to meet his burden of showing the court acted in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (See *Rodriguez, supra*, 20 Cal.4th at pp. 9-10.)  Specifically we conclude Chandler has failed to show that the proffered evidence has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of this action."  (Evid. Code, § 210), such as whether Beeler was the aggressor or was angry during the June 3 incident as Chandler contends.

(Lodgment No. 11 at 16-17.)

In order to prove Chandler committed burglary, the prosecution had to show he entered the CVS store with the intent to commit theft.  Penal Code 459; Lodgment No. 2 at 0081.  In order to prove Chandler committed an assault with a deadly weapon, the prosecution had to prove he willfully committed an act with a weapon, other than a firearm, that would directly and probably have resulted in the application of force to a person, he knew the act would directly and probably result in the application of force to a person, and he had the present ability to apply the force with the weapon.  Penal Code 245(a)(1); Lodgment No. 2 at 0078.  The central issue in the case with regard to the burglaries was intent.  As to the assault charges, the central issue was Beeler's credibility, since Chandler asserted Beeler was the aggressor and disputed that an assault occurred in the liquor cage.  Beeler's firing five months after the incident was not probative of either Chandler's intent or Beeler's credibility.  Thus this factor weighs against Chandler. *Tinsley*, 895 F.2d at 530.  The evidence of Beeler's firing was both reliable and was capable of evaluation by the jury, and thus factors two and three weigh in Chandler's favor. *Id.*  As to the fourth *Tinsley* factor, Beeler's firing had no relevance to either Chandler's intent or Beeler's credibility. *Id.*  Moreover, Beeler was thoroughly cross examined by defense counsel about his actions toward Chandler

and impeached with several inconsistencies. (Lodgment No. 1, vol. 2 at 225-60, 266-69.) David Salo and Christina Liebelt testified they saw Beeler and Chandler's interaction as they left the store and that Beeler appeared to being trying to stop Chandler from exiting. (*Id.* at 276-78; Lodgment No. 1, vol. 3 at 378-79.) Beeler's credibility was clearly impacted by this evidence. The jury acquitted Chandler of count two, the assault with a deadly weapon charge which allegedly occurred outside the store, as well as count four, the criminal threat charge, in which Chandler was accused of threatening Beeler inside the store. Finally, Beeler's firing did not constitute a major part of the defense. Chandler sought to convince the jury he did not intend to steal anything from the CVS and did not threaten or assault Beeler with the box cutter. Beeler's firing may have had marginal probative value with regard to Beeler's temper, but it did not shed much light on Chandler's defense or impeach Beeler's credibility. *Id.*

On the whole, the *Tinsley* factors weigh against the admission of Beeler's employment records and their exclusion did not render Chandler's trial fundamentally unfair. *Estelle*, 502 U.S. at 67. The state court's resolution of this claim was therefore neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and Chandler is not entitled to relief as to this claim.

### ii. *The CVS Employee Manual*

Chandler also sought to admit evidence that Beeler violated the CVS employee manual when he followed Chandler out of the store. According to defense counsel, Beeler told the responding officer Chandler attacked him once while he was in the liquor cage and once by the photo counter inside the store. (Lodgment No. 1, vol. 2 at 35; vol. 3 at 369-71.) He then testified at trial the second attack occurred in the parking lot. (Lodgment No. 1, vol. 2 at 214-17.) The CVS employee manual states that an employee is not to "pursue or chase a fleeing shoplifter" and that "[p]ursuit beyond the entrance/exit of a store will not be tolerated, and may result in disciplinary action up to and including termination." (Lodgment No. 2 at 29-31.) Chandler contends the

1   CVS employee manual would have impeached Beeler's credibility about what

2   happened in the liquor cage and whether Beeler was lying about Chandler assaulting

3   or threatening Beeler.  (*Id.*)  The state appellate court found as follows:

> With respect to the proffered evidence of the CVS policy manual regarding the reporting of suspected shoplifting and treatment of suspected shoplifters, we assume, without deciding, that the court erred by excluding that evidence on the ground it was not relevant. [footnote omitted.] As already noted, that evidence showed the CVS policy manual instructed employees, "Do NOT pursue or chase a fleeing shoplifter" and "Pursuit beyond the entrance/exit of a store will not be tolerated, and may result in disciplinary action up to and including termination."  In light of the evidence showing that following the incident on June 3, Beeler told Officer Vaquero the second alleged attack by Chandler took place inside the store, contradicting his testimony at trial that the second attack took place outside the store in the parking lot, the evidence of the CVS policy manual may have had a modicum of relevancy on the issue of Beeler's credibility.

> Even assuming error, however, we reject Chandler's claim that his convictions of counts 1, 3, and 5 must be reversed because (he asserts) the court's error was prejudicial.  Chandler contends we must apply the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 to his claim because "the trial court's error in excluding the evidence violated [his] federal constitutional rights." [FN5 omitted].  We reject this contention because the court's assumed error does not rise to the level of constitutional error.  Chandler contends the court's exclusion of the evidence of Beeler's employment records and the CVS policy manual "deprived [him] of the ability to present a defense."  However, as we now explain, the record does not support this contention.

> The United States Constitution guarantees a criminal defendant " 'a meaningful opportunity to present a complete defense.' "  (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.)  The right to present a defense generally requires that an accused have the opportunity " 'to present all relevant evidence of *significant* probative value to his defense.' "  (*People v. Babbitt* (1988) 45 Cal.3d 660, 684, quoting *People v. Reader* (1978) 82 Cal.App.3d 543, 553; original italics.)  "Although the *complete* exclusion of evidence intended to establish an accused's defense may impair his or her right to due process of law, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right."  (*People v. Cunningham* (2001) 25 Cal.4th 926, 999 (*Cunningham*), italics added.)  Furthermore, "[a] defendant's right to present relevant evidence is not unlimited" and may be restricted in circumstances where necessary " ' "to accommodate other legitimate interests in the criminal trial process," ' " such as adherence to standard rules of evidence.  (*United States v. Scheffer* (1998) 523 U.S. 303, 308; see also *Taylor v. Illinois* (1988) 484 U.S. 400, 410.)

> Here, the trial record demonstrates that Chandler had a meaningful opportunity to present a complete defense.  The court's exclusion of the evidence at issue here did not prevent Chandler from presenting other evidence challenging Beeler's credibility and supporting his defense that

Beeler was not a credible prosecution witness, and that Beeler was angry and the initial aggressor during the June 3 incident. For example, on direct examination defense counsel asked Liebelt, the CVS employee who was working in the photo lab area of the store, to describe what she observed during the incident in front of the photo counter. Chandler's counsel elicited Liebelt's testimony that Chandler was trying to leave the store and then asked her whether Beeler was doing anything to "impede [Chandler] from leaving." Liebelt testified that Beeler "was trying to kind of position himself in front of [Chandler] or kind of block his way from leaving the store." Liebelt also stated that Beeler appeared to be agitated and upset.

Defense counsel thoroughly cross-examined Beeler about his actions during the June 3 incident and repeatedly asked him whether he was angry at Chandler in the liquor cage area inside the store and in the parking lot. He also vigorously questioned Beeler about the inconsistencies in his accounts of where the alleged second attack occurred.

In addition, defense counsel vigorously argued during his closing arguments that Beeler lied to Officer Vaquero during his investigation of the incident by telling the officer he had not followed Chandler outside the store into the parking lot. Specifically, defense counsel told the jury that Beeler "is willing to lie and, perhaps, he wasn't supposed to follow [Chandler] out of the store, but we have evidence that not only did he lie to Officer Vaquero and walk out of the store, but he walked into the parking lot [and] stayed sometimes within arm's length of [Chandler] . . . ." Defense counsel also argued that, "Officer Vaquero stands up there and said [Beeler] looked like a man visibly shaken, but that same man lies to Officer Vaquero. That's the kind of man [Beeler] is. He's a man who will walk through that door, sit on that stand, swear under penalty of perjury to tell the truth, get up there and say he followed [Chandler] because he was so fearful, and then we have other witnesses who have no reason to lie and who do tell the truth because they are consistent with what happened." Defense counsel also argued to the jury that Beeler was "very angry" when he discovered Chandler inside the liquor cage. Specifically, he told the jury, "Now, going back from the swinging doors that are near the corral area, in the corral area when [Chandler] starts all of this con job, Mr. Beeler is very angry and stands in front of the door ... saying [, "Y]ou're not just going to walk out of here.[""]

Throughout his closing, defense counsel repeatedly attacked Beeler's credibility and his account of the incident. Counsel argued that Beeler told Officer Vaquero that the second attack took place by the photo counter where Liebelt was working, but testified at the preliminary hearing and at trial that the second attack occurred in the parking lot. Chandler's counsel pointedly argued to the jury that "Beeler is not credible."

The foregoing record demonstrates that the court's exclusion of the evidence did not prevent Chandler from vigorously presenting the defense that Beeler was not a credible witness and Beeler was both angry and the initial aggressor during the June 3 incident. Because Chandler has failed to show a "complete exclusion of evidence intended to establish an

accused's defense" (*Cunningham, supra*, 25 Cal.4th at p. 999), we conclude he has failed to show the court's assumed error rises to the level of constitutional error requiring the application of the *Chapman* harmless error standard.

Because the court's assumed error does not rise to the level of constitutional error, the applicable harmless error standard is the one set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Marks* (2003) 31 Cal.4th 197, 226–227["[T]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of *Watson, supra*, 46 Cal.2d at page 836."].) Under the *Watson* standard, if a trial court erroneously excludes evidence, the defendant must show on appeal that it is reasonably probable he or she would have received a more favorable result had that evidence been admitted. (*Watson*, at p. 836; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1125.)

Applying the *Watson* standard, we conclude Chandler has failed to meet his burden of showing it is reasonably probable Chandler would have received a more favorable result had the excluded evidence been admitted. We begin by noting that the jury, by returning a verdict finding Chandler not guilty of assaulting Beeler with a deadly weapon as charged in count 2, acquitted Chandler of what defense counsel referred to as the "second attack" during the June 3 incident. Chandler has failed to show that, but for the exclusion of evidence, it is reasonably probable the jury would have found him not guilty of count 1, which charged him with assaulting Beeler with the box cutter knife inside the liquor cage. The prosecution presented substantial evidence corroborating Beeler's testimony that Chandler had a backpack when he found Chandler inside the liquor cage and that Chandler used a box cutter knife during the assault. Specifically, the prosecution presented evidence that when the police took Chandler into custody because he fit the description of the suspect, he had a plain black backpack with shoulder straps, which was impounded. Officer Spencer testified that when he searched the immediate area where Chandler was taken into custody, he found in some small hedges, about 15 feet from where Chandler dropped to the ground, a box cutter with an angled retractable blade and a pair of wire cutters, which were also impounded.

In addition, Salo, the CVS cashier, corroborated Beeler's testimony that as he and Chandler exited the store, Chandler told him, "I'll kill you." Specifically, Salo testified he heard Chandler make a threatening comment like "I'll hurt you."

Chandler has also failed to show that, but for the exclusion of evidence, it is reasonably probable the jury would have found him not guilty of either the June 3 burglary charged in count 3 or the May 18 burglary of the same store as charged in count 5. For all of the foregoing reasons, we conclude Chandler's contention that the court prejudicially abused its discretion and deprived him of his constitutional right to present a defense by excluding evidence of Beeler's employment records and the CVS policy manual is unavailing.

(Lodgment No. 11 at 15-22.)

Applying the *Tinsley* factors to the exclusion of the CVS manual, this Court agrees the exclusion did not render Chandler's trial fundamentally unfair. *Estelle*, 502 U.S. at 67. The CVS manual had no probative value on the central issue of Chandler's intent with regard to the burglary charges, but did have some probative value on the central issue of Chandler's defense to the other charges, that is, Beeler's credibility. Chandler contended Beeler lied when he told Officer Vaquero Chandler attacked him a second time inside the store. (Lodgment No. 1, vol. 2 at 243.) Beeler later testified at trial that Chandler's second attack occurred in the parking lot of the store. (*Id.* at 215.) The CVS manual would have bolstered Chandler's claim that Beeler lied to Vaquero by providing a context and motive for the lie, which in turn would have further impacted Beeler's credibility. Thus, the first *Tinsley* factor is satisfied. *Tinsley*, 895 F.2d at 530. The evidence was reliable and was capable of being evaluated by the jury, satisfying the second and third *Tinsley* factors as well. *Id*.

The CVS manual was not, however, the sole evidence on the question of Beeler's credibility. *Id*. Defense counsel thoroughly cross examined Beeler about his statements to Vaquero and the inconsistencies between those statements and Beeler's trial testimony. (Lodgment No. 1, vol. 2 at 223-60, 266-69.) Defense counsel also questioned Vaquero about Beeler's statements, noting that Beeler told him the second assault took place inside the store near the photo booth. (Lodgment No. 1, vol. 3 at 368-69.) Specifically, Vaquero said Beeler told him he was "afraid for his life and he stopped following [Chandler] as he exited the front door . . . ." (*Id.* at 371.) Although Beeler testified he did not touch Chandler or try to physically stop him from leaving the store, Christina Liebelt testified Beeler was trying to block Chandler from exiting the store, putting his hands up in front of him; Liebelt also testified she did not hear Chandler threaten Beeler as they passed by the photo booth, contradicting Beeler's testimony that Chandler said "I'll kill you" as they walked out of the store. (Lodgment No. 1, vol. 2 at 211-12; vol. 3 at 377-78.) Defense counsel also vigorously argued in closing that Beeler was lying about his confrontation with Chandler, posing himself as

the victim when in fact he was the aggressor.  (*Id.* at 471-82.)  Thus, the fourth *Tinsley* factor weighs against admission of the evidence.  *Tinsley*, 895 F.2d at 530.

Finally, while Beeler's credibility constituted a major part of Chandler's defense, the CVS manual was only a very small component of that defense.  *Id*.  The inconsistencies between the statements Beeler gave to police and his trial testimony, coupled with Liebelt's testimony that Beeler was blocking Chandler's exit from the store were the focus of Chandler's defense, and the CVS manual was only marginally helpful to further impeach Beeler's credibility.  Thus, the fifth *Tinsley* factor weighs only slightly in favor of admission.  *Id*.  On the whole, the *Tinsley* factors weigh only mildly in Chandler's favor.

Even if the evidence was wrongly excluded, as the state appellate court assumed, Chandler has not established the exclusion rendered his trial "fundamentally unfair," or that the exclusion had a "substantial and injurious effect or influence on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (stating that on federal habeas review, the question this Court answer is whether the error had a "substantial and injurious effect" on the jury's verdict); *Estelle*, 502 U.S. at 67.  The defense was able to impeach Beeler's credibility sufficiently, as reflected in the jury's verdict wherein they acquitted Chandler of assaulting Beeler with a deadly weapon in the CVS parking lot, and issuing a criminal threat to Beeler.  (Lodgment No. 2 at 0214-19.)  In this Court's view, the additional evidence impeaching Beeler's credibility that the CVS manual would have provided would not have altered the jury's conclusions.

For all the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.  Chandler is not entitled to relief as to this claim.

C.  *Admission of "Other Crimes" Evidence*

In claim two, Chandler contends the trial court improperly permitted the prosecution to introduce evidence of other, uncharged crimes.  (Pet. at 16-25.)  During in limine motions, the trial judge ruled the prosecution would be permitted to present

testimony from a store security guard, Richard Alan Ross, who saw Chandler stealing items from a Von's grocery store in 2009. During the incident, Chandler was observed by Ross and another store security guard with an empty black duffel bag inside his shopping cart. Chandler walked to the far end of the dairy aisle and put 20 one-pound blocks of cheese into his cart. (Lodgment No. 1, vol. 2 at 128-29.) Chandler then walked to another aisle farther away and put some Starbucks drinks and the cheese into his duffel bag. (*Id.* at 130.) He then took the bag out of the cart, put it over his shoulder, and walked out of the store. (*Id.*) Ross and the other security guard stopped Chandler outside the store, took him into custody, and searched him. (*Id.* at 130-31.) Chandler did not have any money on him. (*Id.* at 131.) This evidence was admitted to show Chandler's intent with regard to the May 18 and June 3, 2010 incidents. (Lodgment No. 1, vol. 2 at 31.) The jury was instructed that the evidence presented by Ross was relevant only to their determination of whether Chandler had the required intent to commit burglary. The instruction read as follows:

> To prove Count 5, which charges defendant with burglary of a CVS STORE on May 18, 2010, the PEOPLE must prove that when the defendant entered the building, he intended to commit theft.
>
> To prove Count 3, which charges defendant with burglary of a CVS STORE on June 3, 2010, the PEOPLE must prove that when the defendant entered the building, he intended to commit theft.
>
> The prosecution has presented evidence concerning a theft committed by the defendant on Jan. 15, 2009, that is not charged in this case.
>
> You may consider this evidence only if the prosecution has proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense on Jan. 15, 2009. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> If the prosecution has not met this burden, you must disregard this evidence entirely.
>
> If you decide that the defendant committed the uncharged offense on Jan. 15, 2009, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

- The defendant entered the CVS STORE on May 18, 2010 with the intent to commit theft.

And whether or not

- The defendant entered the CVS STORE on June 3, 2010 with the intent to commit theft.

  Do not consider this evidence for any other purpose

  Do not conclude from this evidence that the defendant is disposed to commit crime.

  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of burglary as charged in Counts 3 and 5. The prosecution must still prove each element of every charge beyond a reasonable doubt.

(Lodgment No. 2 at 0074-75.)

On appeal, the California Court of Appeal upheld the trial judge's decision, and wrote as follows:

We conclude the court did not abuse its discretion under Evidence Code sections 1101 and 352 by admitting Ross's testimony regarding Chandler's uncharged prior act of stealing merchandise from a Vons store in January 2009. Ross's testimony was relevant to prove a fact other than Chandler's disposition or propensity to commit the theft-related crimes (burglary and grand theft of personal property) charged in this case in counts 3, 5, and 6. Specifically, for purposes of Evidence Code section 1101(b), Ross's testimony was relevant to prove Chandler acted with intent to steal during the May 18 and June 3 incidents at the CVS store. That the question of whether Chandler acted with intent to steal was a factual issue at trial is shown by the court's jury instructions. The court instructed the jury under CALCRIM No. 1700 that, in order to find Chandler guilty of burglary as charged in counts 3 and 5, the prosecution was required to prove beyond a reasonable doubt that Chandler acted with the specific intent to commit theft when he entered the building. The court also instructed the jury under CALCRIM No. 1800 that, in order to find Chandler guilty of grand theft as charged in count 6, the prosecution was required to prove beyond a reasonable doubt that Chandler took the property with the intent to permanently deprive the owner of it. In addition, the court instructed the jury under CALCRIM No. 1800 that a theft occurs when (1) the defendant takes possession of property owned by someone else; (2) the defendant takes the property without the owner's consent; (3) when the defendant takes the property, he intends to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property; and (4) the defendant moves the property and keeps it for any period of time.

/ / /

On the issue of whether the charged offenses and the uncharged 2009 theft were sufficiently similar to support the inference that Chandler probably harbored the same intent to steal in each instance (*Ewoldt*, *supra*, 7 Cal.4th at p. 402), substantial evidence shows that the May 18 and June 3 incidents at the CVS store share a number of distinctive similarities with the 2009 theft incident at the Vons. In all three incidents, Chandler targeted commercial retail businesses. In all three incidents, Chandler used a large backpack and went to a remote part of the store with intent to commit theft. Also, the charged and uncharged incidents occurred less than one year apart, and the CVS store was located in the same general area as the Vons store. Because only the "least degree of similarity" between the uncharged misconduct and the charged offenses is required in order to prove intent (*Ewoldt* at p. 402), we conclude the similarities between Chandler's prior uncharged theft at the Vons in 2009 and the burglary and grand theft offenses he was charged with committing at the nearby CVS store in 2010 are sufficient to support the court's decision to admit the other crimes evidence of the 2009 theft incident. We thus conclude that Ross's testimony was admissible under Evidence Code section 1101(b) to prove the specific intent elements of the burglary and grand theft offenses charged in counts 3, 5, and 6.

We also conclude that Chandler has failed to meet his burden of showing that the probative value of the evidence of the 2009 theft incident was substantially outweighed by the probability that its admission would necessitate undue consumption of time, or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (§ 352; *People v. Cadge*, *supra*, 6 Cal.4th at p. 609.) The presentation of Ross's testimony regarding the 2009 incident did not necessitate undue consumption of time, as shown by the fact that his testimony is set forth on only eight pages of the reporter's transcript. The evidence of Chandler's conduct during the 2009 incident is no more inflammatory than the evidence of his behavior during the two 2010 incidents at issue in this case. All three incidents involved an accusation that Chandler acted with intent to commit theft at a retail business. Chandler's claim that admission of the evidence of the 2009 theft incident was "highly prejudicial" is refuted by the fact that the jury found he was not guilty of (1) committing a second assault upon Beeler with a deadly weapon on June 3, as charged in count 2; (2) making a criminal threat against Beeler on June 3, as charged in count 4; and (3) committing grand theft on May 18, as charged in count 6. Also, the court gave a limiting instruction concerning the other crimes evidence, using a modified version of CALCRIM No. 375 (discussed, *ante*). Absent a showing to the contrary, we must presume the jury followed that instruction. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

For all of the foregoing reasons, we conclude the court did not abuse its discretion in admitting under Evidence Code section 1101(b) the evidence of the 2009 theft incident.

(Lodgment No. 11 at 28-30.)

As previously noted, state evidentiary rulings are not generally subject to federal habeas review. *Estelle*, 502 U.S. at 70. Thus, to the extent Chandler contends the

evidence was admitted in violation of state law, he is not entitled to relief. *Id.* The admission of evidence can violate a petitioner's due process right, however, if the challenged evidence was so prejudicial as to render the trial fundamentally unfair. *Id*. at 67. Only if a jury can draw no permissible inferences from the challenged evidence can the admission be fundamentally unfair. *Mammal v. Van de Camp*, 926 F.2d 918, 920 (9th Cir. 1991).

As the state court noted, the "other crimes" evidence was admitted to show Chandler's intent with regard to the burglary charges. The prior theft incident, in which Chandler also used a large black backpack and went to a remote part of the store to commit his theft, was relevant and probative of the disputed element of whether Chandler had the requisite intent to commit burglary. The jury was given limiting instructions directing it consider the "other crimes" evidence only for the purpose of deciding whether Chandler entered the CVS stores with the intent to commit burglary. (Lodgment No. 2 at 0074-75.) Jurors are presumed to follow the instructions they are given. *Kansas v. Marsh*, 548 U.S. 163, 170 (2006)

In any event, as Respondent correctly notes, the Ninth Circuit has stated that there is no clearly established Supreme Court law which holds that evidence of other crimes is inadmissible or violates due process because the Supreme Court expressly reserved deciding that issue in *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006). Where there is no clearly established Supreme Court law, a state court's denial of a claim cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court law. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006). As the Ninth Circuit has noted:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance

1   of the writ.  Absent such "clearly established Federal law," we cannot
2   conclude that the state court's ruling was an "unreasonable application."

3   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams*, 529 U.S.
4   at 375 and *Musladin*, 549 U.S. at 77).

5   For the foregoing reasons, Chandler is not entitled to federal habeas corpus relief
6   as to this claim.  *Williams*, 529 U.S. at 412-13.

7   D.  *Prosecutorial Misconduct*

8   Chandler next contends the prosecutor committed misconduct when she "failed
9   to disclose [exculpatory] evidence in possession of investigative agencies, [and]
10  knowingly allow[ed] exculpatory evidence to be destroyed in bad faith and
11  misrepresentation." (Pet. at 26.)  Essentially, Chandler contends the prosecutor knew
12  the store surveillance video contained exculpatory evidence and misrepresented both
13  the existence of the video and the contents of the video, then failed to preserve that
14  evidence, in violation of his due process rights. (*Id.* at 26-32.)  Respondent argues the
15  state court's denial of this claim was neither contrary to, nor an unreasonable
16  application of, clearly established Supreme Court law.  (Answer at 41-48.)

17  The facts underpinning this claim are as follows:  Prior to trial, defense counsel
18  made an in limine motion to sanction the prosecution for its failure to preserve video
19  surveillance tapes of the June 3, 2010, incident.  Counsel contended that video tapes
20  of the interior of the store existed, they would support the defense contention that
21  Chandler did not threaten Beeler, that Beeler was not afraid of Chandler but rather was
22  physically blocking his exit from the store, and that Chandler did not have a box cutter
23  in his hands as he exited the CVS store.  (Lodgment No. 2 at 0024-26.)  Counsel also
24  noted that Chandler had asked his prior attorney to get the surveillance tape, had
25  attempted to secure the surveillance tape while he was representing himself, and that
26  the tape had now been destroyed.  (*Id.*)  As a sanction, counsel asked for a dismissal of
27  the assault with a deadly weapon charges or a jury instruction which told jurors to view
28  the assault charges with skepticism because the prosecution did not preserve the

surveillance tape. (*Id.*)   At the hearing on the in limine motions, the trial judge concluded the prosecution did not have an affirmative obligation to gather evidence for the defense, and that there was no evidence the prosecution ever had possession of the CVS surveillance tape; no sanction was imposed. (Lodgment No. 1, vol. 2 at 57-61.)

Later that day, new information came to light. The prosecutor told the court and counsel that she had spoken to Officer Vaquero, and he had told her the following:

> [MS. FURNARI:] I did confirm with Officer Vaquero who was — who reported to the CVS store that night or that late afternoon after the defendant was taken into custody. He made an attempt to view store surveillance video. He watched for about a 30-minute period to see if he could see any video showing either the defendant inside the store or Mr. Beeler in the store or the two of them together.
>
> He reports, as is consistent with his police report, that he did not see any video of the defendant either entering or exiting the store and that he does not believe that the cameras would pick up anything going on besides the entryway and the cash registers. But he did not see any video that night of the entering or exiting of the store.
>
> He did say that the two witnesses, Mike Hochdanner and David Beeler, referred to video, but he believed it was the video relating the prior incident on May 18.
>
> I spoke to Mr. Hochdanner. There was a little bit of a discrepancy. He said that he believed that there was video copied by law enforcement on the night of June 3rd. He believes that Mr. Beeler had a still shot paused on the store surveillance camera showing the defendant just coming in through the front door. He believes he provided some blank CD's to an officer or officers that night for them to make copies but he never saw any copied version that law enforcement might have taken away.
>
> Then he talked to Mr. Beeler. He said about three weeks after the incident, three weeks after June 3rd, his L.P.O., loss prevention officer, came to the store and was looking for some video, and he believes that the L.P.O. pulled up the defendant entering and exiting the store and Mr. Beeler himself exiting the store after the defendant.
>
> But he didn't see any video showing the rest of the store, and he was not in the room. If any copy was provided at any time to San Diego Police Department officers, he believes that the L.P.O. was making a copy to put in the store's internal loss prevention file.
>
> So I just wanted to make defense counsel and the court aware that we do not believe that there's any video in law enforcement possession of the June 3rd incident, and if there was video that existed, with respect to

/ / /

1  CVS having it in their possession, we believe that it may have — if it did exist, it was only of the defendant entering and exiting the store.

2

3  (*Id.* at 63-65.)

4  Voicing concern about the series of events, the trial judge delayed the start of

5  trial until the following morning to give defense counsel time to contact any possible

6  witnesses regarding the surveillance tape.  (*Id.* at 81.)  Eventually, the trial judge

7  concluded there was "no convincing authority that requires the prosecution to collect

8  evidence such that *Trombetta* would be implicated if they failed to preserve it and

9  *Brady* would be implicated if they failed to turn it over."  (Lodgment No. 1, vol. 3 at

10 309.) He denied the motion to dismiss the assault charges or, in the alternative, instruct

11 the jury to view the assault charges with skepticism.  (*Id.* at 313-14.)

12 It is not clear to the Court that that this claim is exhausted.  Chandler did not

13 explicitly raise this claim in the petition for review he filed in the California Supreme

14 Court, which is the only document he filed in the California Supreme Court.  The

15 petition for review only states that "Petitioner asserted 23 claims in his habeas corpus

16 petition," and "Petitioner adopts the statement presented in the Court of Appeal's

17 decision for purposes of this petition."  (Lodgment No. 12 at 28.)  There was no

18 concomitant habeas corpus petition filed in the California Supreme Court which raised

19 this claim.  Respondent does not, however, contend the claim is unexhausted.  (*See*

20 Answer at 46.)  In any event, if it is not exhausted, this Court may deny the petition if

21 it is "perfectly clear that the applicant does not raise even a colorable federal claim."

22 *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

23 "The suppression by the prosecution of evidence favorable to an accused upon

24 request violates due process where the evidence is material either to guilt or

25 punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v.*

26 *Maryland*, 373 U.S. 83, 87 (1963).  In order to establish a *Brady* violation, a defendant

27 must establish three things: (1) the evidence was suppressed by the prosecution, either

28 willfully or inadvertently, (2) the withheld evidence was either exculpatory or

impeachment material, and (3) the evidence was material to the defense. *Benn v. Lambert*, 283 F.3d 1040, 1052-53 (9th Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985) and *United States v. Agurs*, 427 U.S. 97, 110 (1976).) "Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial. *Benn*, 283 F.3d at 1053 (citing *Bagley*, 473 U.S. at 676; *Agurs*, 427 U.S. at 111-12). "Moreover, we analyze all of the suppressed evidence together, using the same type of analysis that we employ to determine prejudice in ineffective assistance of counsel cases." *Id.* (citing *Bagley*, 473 U.S. at 682 and *United States v. Shaffer*, 789 F.2d 682, 688-89 (9th Cir. 1986).)

The Ninth Circuit has noted that "[t]he Supreme Court limited *Brady*'s reach in *California v. Trombetta*, 467 U.S. 479 [citations omitted] (1984) and *Arizona v. Youngblood*, 488 U.S. 51 [citations omitted] (1988)." *Richter v. Hickman*, 521 F.2d 1222, 1234 (9th Cir. 2008), *reversed on other grounds by Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770 (2011). "*Trombetta* holds that, for the *Brady* standard to apply, "evidence must . . . possess an exculpatory value that was apparent before the evidence was destroyed," and "*Youngblood* holds that the State's failure to preserve 'potentially useful' evidence does not constitute a due process violation unless the defendant can show bad faith on the part of the police." *Id.* (internal citations omitted).

Chandler has not established any of the requirements to establish a *Brady* claim. First, the record does not show the prosecution suppressed or failed to disclose the existence of the CVS surveillance tape, only that they did not secure it themselves. *Benn*, 283 F.3d at 1052-53. Moreover, Chandler has not established the CVS surveillance tape was exculpatory or contained impeachment material. In the June 3 incident, Chandler was convicted of assaulting Beeler with a deadly weapon in the liquor cage area and burglary of the CVS store; both charges also alleged Chandler personally used a deadly weapon. (Lodgment No. 2 at 0009-11.) He was acquitted of the second assault outside the store and making a criminal threat. (*Id.* at 0214-19.) The camera views inside the CVS store were of the check stands, the customer service

booth, the two entrances to the store, and two views of the sales floor. (Lodgment No. 1, vol. 2 at 159-60 (discussing video surveillance of the May 18 incident at the same store).) The record convincingly establishes no video surveillance existed of the liquor cage area where Chandler's assault on Beeler with the box cutter occurred. Thus, any video that could have been obtained would not have assisted Chandler in his defense as to that charge. As to the burglary charge, the jury was required find Chandler entered the CVS store with the intent to commit theft, and Chandler has not established how the video would have shed light on his intent. *See* Penal Code § 459.

Video of the interior of the store may have been relevant to Chandler's claim he did not have a box cutter in his hand and to impeach Beeler's credibility. If the video showed Beeler lied about Chandler verbally threatening him at the photo booth area or that Chandler did not have a box cutter in his hand, it may have convinced the jury Beeler was also lying about the assault inside the liquor cage. But Chandler provides no convincing evidence the surveillance video would have shown any of these things, and other evidence supports the conclusion that the video, if it existed would not have assisted Chandler's defense. David Salo testified that he saw something in Chandler's hand, which he thought was a box cutter, while Beeler and Chandler were in a heated conversation and walking toward the store exit. (Lodgment No. 1, vol. 2 at 274-75, 297.) Salo said Chandler was "being very aggressive[,] pushing Mr. Beeler — trying to push Mr. Beeler out or to get out [of] his way . . . ." (*Id.* at 274-75.) A box cutter was found in the bushes 10-15 feet away from Chandler. (Lodgment No. 2, vol. 3 at 333-36.)

For the same reasons, Chandler has also not established video surveillance tapes of the June 3 incident were material to his defense and the Court's confidence in the outcome of the trial is not undermined. *Benn*, 283 F.3d 1052-53. There is no convincing evidence in the record supporting a conclusion that surveillance tapes would have further impeached Beeler's credibility to such a degree that the jury's decision would have been different. *Id.*

1    Chandler has also not established a *Trombetta*/*Youngblood* violation.   As

2    discussed above, Chandler has not established that any video surveillance had "an

3    exculpatory value that was apparent before the evidence was destroyed." *Richter*, 521

4    F.2d at 1234.   Nor has he established failure to preserve the surveillance tape was due

5    to "bad faith on the part of the police."   *Id.*   As Respondent points out, at most, the

6    police and the prosecutor were guilty of negligence when they failed to obtain or

7    preserve any surveillance video.   There is no evidence in the record of bad faith.   *Id.*

8        There was no *Brady* or *Trombetta/Youngblood* violation in Chandler's case.

9    Thus, he is not entitled to relief as to this claim.

10       E.   *Ineffective Assistance of Counsel*

11       Chandler asserts trial counsel was ineffective for failing to secure the CVS

12   surveillance tape, and that trial counsel had a conflict of interest because his previous

13   attorneys were co-workers of counsel's. (Pet. at 33-37.) He also contends trial counsel

14   failed to object to the prosecutor presenting perjured testimony by Beeler.   (*Id.*)

15       As with the preceding claim, it is not clear to this Court that Chandler's

16   ineffective assistance of counsel claims are exhausted because he did not explicitly

17   raise them in the petition for review he filed in the California Supreme Court,

18   (Lodgment No. 12 at 28).   Further, Respondent does not contend the claim is

19   unexhausted. (*See* Answer at 46.)   Nevertheless, this Court may deny the petition if it

20   is "perfectly clear that the applicant does not raise even a colorable federal claim."

21   *Cassett*, 406 F.3d at 624.

22       To establish ineffective assistance of counsel, a petitioner must first show his

23   attorney's representation fell below an objective standard of reasonableness. *Strickland*

24   *v. Washington*, 466 U.S. 668, 688 (1984).   "This requires showing that counsel made

25   errors so serious that counsel was not functioning as the 'counsel' guaranteed the

26   defendant by the Sixth Amendment." *Id.* at 687.   He must also show he was prejudiced

27   by counsel's errors. *Id.* at 694.   Prejudice can be demonstrated by a showing that "there

28   is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "The standards created by *Strickland* and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 788 (2011) (citations omitted). These standards are "difficult to meet" and "demand[] that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).  Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction. *Richter*, 131 S.Ct. at 786, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Strickland*, 466 U.S. at 687.

### i. *Failure to Secure the CVS Surveillance Tape*

Chandler first contends counsel was ineffective for failing to secure the June 3 CVS store surveillance tape.  (Pet. at 33-36.)  Chandler was arrested on June 3 and his first court appearance was June 8, 2010.  (Lodgment No. 2 at 0173.)  On June 22, 2010, he was granted permission to represent himself and did so until August 18, 2010, when the Alternate Public Defender's Office was appointed to represent him.  (*Id.* at 0179, 0187.)  Surveillance tapes were kept by CVS for a maximum of six weeks, then taped over.  (Lodgment No. 1, vol. 2 at 68.)  Thus, any surveillance tape was destroyed by

approximately July 15, 2010.   Accordingly, only Chandler's first attorney's performance is at issue in this claim.

Even if Chandler's attorney should have obtained the surveillance tape before it was destroyed, Chandler has not shown he was prejudiced by this failure because he has not established that, had counsel obtained the tape, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   As discussed above in section IV(D) of this R&R, the record establishes there were no video cameras recording the liquor cage area and there was nothing on the tape that would have exonerated Chandler of the June 3 burglary charge.   As to the weapons enhancements, other evidence, including Salo's testimony and the fact that a box cutter was found near Chandler when he was arrested, was sufficient on its own to support the jury's conclusion that Chandler was armed with a box cutter during the burglary.   (*See* Lodgment No. 1, vol. 2 at 297; vol. 3 at 333.)   Accordingly, he is not entitled to relief as to this claim.

### ii. *Conflict of Interest*

Chandler also argues his trial counsel had a conflict of interest that compromised his defense, namely, that Chandler's two previous attorneys were co-workers of trial counsel.  This conflict of interest, according to Chandler, compromised his defense and resulted in counsel failing to argue that the previous attorneys failed to conduct an adequate pre-trial investigation.  (Pet. at 36.)

Chandler's claim is conclusory.  He provides no evidence that counsel suffered from a conflict of interest.   Nor does he state what investigation, other than obtaining the CVS surveillance tape, counsel should have performed or how any evidence gleaned from that investigation would have assisted his defense.   Conclusory allegations cannot form the basis for federal habeas corpus relief.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  He is not entitled to relief as to this claim.

/ / /

### iii. *Failure to Object to Presentation of Perjured Testimony*

Finally, Chandler claims counsel should have objected to the prosecutor's use of "perjured testimony," i.e., Beeler's testimony. (Pet. at 36.)  A prosecutor commits misconduct when she "(1) presents evidence that is "actually false," (2) "[knows] or should have known that the testimony was actually false," and (3) "the false testimony was actually material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue v. People of the State of Illinois*, 360 U.S. 264, 269-71 (1959)); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).  However, the presentation of conflicting versions of events, without more, does not constitute knowing presentation of false evidence. *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002) (citing *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989)).

Here, the alleged perjured testimony consists of nothing more than conflicting versions of events.  Specifically, Beeler testified Chandler assaulted him with a box cutter in the liquor cage area, then threatened him while they were walking out of the store together in a heated exchange. (Lodgment No. 2, vol. 2 at 206-17.)  Chandler contended that Beeler was the aggressor, lied about his confrontation with Chandler, and physically tried to stop Beeler from leaving the store. (Lodgment No. 2, vol. 2 at 225-60, 265-68, 290, 294; vol. 3 at 377-78,471-82.)  Any objection to Beeler's testimony as "perjured" would have been baseless and counsel is not required to make baseless objections. *See Trilo v. Biter*, __ F.3d __, 2014 WL 2695531 (9th Cir. June 16, 2014).  In addition, Chandler has not established he was prejudiced by counsel's failure to object to Beeler's version of events because it is clear any objection would have been overruled as unfounded.

### F. *Cumulative Error*

Finally, Chandler contends the cumulative effect of the errors committed at his trial denied him his right to fair trial. (Pet. at 38.)  Respondent counters that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem. of P. & A. Supp. Answer at 54.)

Chandler raised this claim in the petition for review he filed in the California Supreme Court. (Lodgment No. 12.) That court denied the claim without citation of authority. (Lodgment No. 13.) Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis. *Ylst*, 501 U.S. at 805-06. That court agreed with Respondent, finding that although the trial court erred by excluding evidence of the CVS employee manual, there was insufficient evidence of cumulative error. (Lodgment No. 11 at 36.)

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000). "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle*, 505 F.3d at 927; *see also United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (stating that where no single trial error in isolation is sufficiently prejudicial to warrant habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant"). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." *Frederick*, 78 F.3d at 1381 (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)). Cumulative error warrants habeas relief only where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

The appellate court did not find any error, stating that "[w]ith respect to the proffered evidence of the CVS policy manual regarding the reporting of suspected shoplifting and treatment of suspected shoplifters, we assume, *without deciding*, that the court erred by excluding that evidence on the ground it was not relevant."

(Lodgment No. 11 at 17) (italics added).  The state appellate court further concluded that any error did not rise to the level of a constitutional violation, and this Court agrees. Where "there is no single constitutional error . . . there is nothing to accumulate to a level of a constitutional violation." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *see also Hayes v. Ayers,* 632 F.3d 500, 523-24 (9th Cir. 2011) (stating that "[b]ecause we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible").   Moreover, Chandler has not suffered the "effect of multiple trial court errors" such that his due process rights were violated and he is entitled to federal habeas relief.  *See Parle*, 505 F.3d at 927.  Accordingly, Chandler is not entitled to relief for his cumulative error claim. *Williams*, 529 U.S. at 412-13.

## V.    CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **October 20, 2014** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 7, 2014**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**DATED:** September 16, 2014

_____

Bernard G. Skomal

**United States Magistrate Judge**