1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

8
9

| MATTHEW LLOYD CHANDLER, | CASE NO. 14cv103-GPC(BGS) |
|---|---|
| Petitioner, | **ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT FOR HABEAS CORPUS** |
| vs. | |
| STU SHERMAN, Warden, | |
| Respondent. | |

15
16
17
18
19
20
21
22
23
24

     On January 15, 2014, Petitioner Matthew Lloyd Chandler ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks judicial review of his conviction in San Diego County Superior Court Case No. SCD227785 for assault with a deadly weapon and burglary as well as weapons enhancements. (Dkt. No. 1.) Respondent filed an Answer on March 11, 2014 (Dkt. No. 8), and Petitioner filed his Traverse on June 23, 2014. (Dkt. No. 17.) On September 16, 2014, Magistrate Judge Bernard G. Skomal issued a Report and Recommendation ("Report") that this Court deny the petition. (Dkt. No. 18.) On October 20, 2014, Petitioner filed objections ("Objections") to the Magistrate Judge's Report. (Dkt. No. 19.)

25
26
27

    After careful consideration of the pleadings and relevant exhibits submitted by the parties, this Court OVERRULES Petitioner's Objections, ADOPTS the Magistrate Judge's Report in its entirety, and DENIES the Petition for Writ of Habeas Corpus.

28

**PROCEDURAL BACKGROUND**

On October 28, 2010, Petitioner was charged with two counts of assault with a deadly weapon by means of force likely to produce great bodily injury (counts one and two), in violation of California Penal Code ("Penal Code") section 245(a)(1); two counts of burglary (counts three and five), in violation of Penal Code section 459; one count of making a criminal threat (count four), in violation of Penal Code section 422; and one count of grand theft of personal property (count six), in violation of Penal Code section 487(a). (Dkt. No. 9, Lodgment No. 2, vol. 1, part 2 at 104-09.) As to counts one and two, the amended information also alleged Petitioner had personally used a deadly weapon, within the meaning of Penal Code section 1192.7(c)(23), and as to counts three and four, the amended information alleged Petitioner had personally used a deadly weapon, within the meaning of Penal Code section 12022(b)(1). (Id.) In addition, the amended information alleged Petitioner had suffered thirteen prior felony convictions which rendered him ineligible for probation, within the meaning of Penal Code section 1203(e)(4), eight prior convictions for which he had served a prison sentence, within the meaning of Penal Code sections 667.5(b) and 668, one serious felony prior conviction, within the meaning of Penal Code sections 667(a)(1), 668 and 1192.7(c), and one prior "strike" conviction, within the meaning of Penal Code sections 667(b) through (i), 1170.12, and 668. (Id.)

Following a jury trial, a jury found Petitioner guilty of counts one, three, and five, and not guilty of counts two, four, and six. (Id.) Petitioner admitted he had suffered the prior convictions as alleged. (Dkt. No. 9, Lodgment No. 1, vol. 4 at 200-06.) He was sentenced to fourteen years and four months in state prison. (Dkt. No. 9, Lodgment No. 2, vol. 1, part 2 at 112.)

On July 7, 2011, counsel for Petitioner filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Dkt. No. 9, Lodgment No. 3.) While that appeal was pending, on October 27, 2011, Petitioner filed a Petition for Writ of Habeas Corpus in the San Diego Superior Court, which the court

denied on December 12, 2011 because it lacked jurisdiction due to the pending appeal. (Dkt. No. 9, Lodgment No. 3.) On January 9, 2012, Petitioner then filed a document he entitled "Supplemental Brief", and on May 21, 2012 he filed a Petition for Writ of Habeas Corpus in the state appellate court. (Dkt. No. 9, Lodgment Nos. 5, 6.) On June 5, 2012, the state appellate court consolidated the direct appeal and the habeas corpus petition. (Dkt. No. 9, Lodgment Nos. 8-9.) On October 30, 2012, the Court of Appeal ultimately affirmed Petitioner's convictions and denied the petition for writ of habeas corpus in an unpublished written opinion. (Dkt. No. 9, Lodgment No. 11.) Petitioner then filed a Petition for Review in the California Supreme Court, which was summarily denied on January 16, 2013. (Dkt. No. 9, Lodgment Nos. 12-13.)

On January 10, 2013, Petitioner filed another Petition for Writ of Habeas Corpus in the San Diego Superior Court. (Dkt. No. 9, Lodgment No. 14.) On February 14, 2013, the Superior Court denied the petition in a written opinion. (Dkt. No. 9, Lodgment No. 15.)  In March 2013, Petitioner then filed a Petition for Writ of Habeas Corpus in the California Court of Appeal. (Dkt. No. 9, Lodgment No. 16.) On March 28, 2013, the Court of Appeal denied the Petition for Writ of Habeas Corpus in a written, unpublished opinion. (Dkt. No. 9, Lodgment No.17.)

On January 15, 2014, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court. (Dkt. No. 1.) Respondent filed an Answer on March 11, 2014. (Dkt. No. 8.) Petitioner filed a Traverse on June 23, 2014. (Dkt. No. 17.) On September 16, 2014, the Magistrate Judge issued a Report recommending that this Court deny the petition. (Dkt. No. 18.) Petitioner filed Objections to the Magistrate Judge's Report on October 20, 2014. (Dkt. No. 19.)

**FACTUAL BACKGROUND**

This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1). The following facts are taken from the California Court of Appeal opinion decided on October 30, 2012.

*A. The People's Case*
*1. "Other crimes" evidence (Evid. Code § 1101(b))*

Over pretrial objection, the prosecution presented evidence under Evidence Code section 1101(b) (discussed more fully, *post*) that Chandler committed theft in early 2009 at a Vons store.

*2. May 18, 2010 burglary and grand theft of personal property (counts 5 & 6)*

Earl Hochdanner testified that at around 9:00 p.m. on May 18, he was working as a shift supervisor at a CVS store. Hochdanner walked into the storage area in the back of the store through a swinging door on which there was a sign reading, "Employees Only Beyond This Point." Hochdanner saw Chandler standing in the open doorway of the restricted liquor cage, which is a large wooden cage wrapped in chicken wire with a locked wooden door where cigarettes, liquor, and electronics were stored. The liquor cage door had a hinge that made the door shut automatically. The door handle locked automatically and, although the door could be opened from the inside without a key, a key was needed to open the door from the outside. Hochdanner observed that the liquor cage light was on and the door was open. The liquor cage door had been locked earlier and the light had been turned off.

When Chandler saw Hochdanner, Chandler first tried to close the liquor cage door, but then opened it back up again. Hochdanner testified that Chandler was wearing a large black backpack that "looked full." Hochdanner asked Chandler what he was doing in the liquor cage. Chandler replied that he was looking for the bathroom and that someone told him the bathroom was in the back. Hochdanner thought Chandler's statement was false because a store employee would have told Chandler the bathrooms were located in the pharmacy area.

Hochdanner then asked Chandler what he had taken, and Chandler responded that he had not taken anything. When Hochdanner asked whether he could look in Chandler's backpack, Chandler said, "Fuck no." Hochdanner asked Chandler to leave the store and then walked him out of the store and watched him leave.

Hochdanner testified he went back to the liquor cage to see if anything was missing and then told his manager he had caught someone in the liquor cage. Hochdanner's manager reminded him that an inventory had just been taken of the items in the liquor cage. Hochdanner checked the cigarettes and determined that 30 cartons of cigarettes, totaling about $1,500, were missing.

Hochdanner inspected the liquor cage to try to determine how Chandler had opened the door and found that the chicken wire had been clipped next to the door frame about a foot and a half below the level of the door handle. The clipped wires looked like they had been pulled apart. Hochdanner put his arm through the hole in the chicken wire and was able to reach the door handle and open the door. Hochdanner indicated that the store was equipped with a video surveillance system, but the only camera in the rear area of the store behind the swinging doors was by the receiving door "about 100 or 200" feet away from the liquor cage and so nothing that happened inside the cage would have been video recorded. Hochdanner testified that "[w]e had video of the suspect walking in the store and walking

out of the store with me." A video clip showing Chandler in the store that night was played for the jury.

*3. June 3, 2010: Assault with a deadly weapon (counts 1 & 2), burglary (count 3), and making a criminal threat (count 4)*

David Beeler testified that at around 4:50 p.m. on June 3, he was working as the assistant manager at the same CVS store. He went into the back storage room, opened the liquor cage with his key, turned on the light, and saw Chandler lying on his stomach inside the liquor cage. Beeler saw a few cartons of cigarettes and a beer on the floor next to a backpack, about a foot away from Chandler. As Beeler was standing in the doorway holding the door open, Chandler reached for the backpack and stood up.

Chandler told Beeler, "I don't have anything," and opened the backpack. Beeler recognized Chandler from a photograph of Chandler taken at the store entrance on the night of the prior incident. The store manager had shown the photograph to Beeler and told him to "keep an eye out."

As Beeler was standing in the liquor cage doorway, Chandler walked toward him to get out of the cage, saying, "You ain't got me. You don't got anything on me. You can't do anything." Beeler put his hand out to stop Chandler from leaving and said, "Wait a minute. Wait, wait, wait. You're the guy from last time." Chandler then reached into the front right pocket of his pants, pulled out a standard box cutter knife, and swung it at Beeler's neck. Beeler testified that the box cutter came within about three inches of his neck. Beeler fell back "in shock" out of the liquor cage doorway, and Chandler walked out of the liquor cage and out through storage room doors into the store.

Beeler stated he followed behind Chandler and tried to call 911 from his cell phone but was flustered and misdialed a couple of times. As they passed the photo lab counter, Beeler, who was about 10 feet behind Chandler, yelled out to the photo clerk, Christina Liebelt, that Chandler tried to stab him and for her to call 911. Beeler testified he had a hard time speaking when he spoke to her, and she thought he was joking. Chandler, who became angry, stopped walking and said something like "I ain't got nothing on you" and then continued walking with Beeler again following him. Beeler testified that as they exited the store through the front entrance, Chandler told him, "You ain't nothing to me. I'll kill you. No problem." Chandler walked across a parking lot toward a bus stop with Beeler following him. Before they reached the bus stop, Chandler turned around, took the box cutter out of his pocket again, and told Beeler something to the effect that he had no problem killing Beeler, and Beeler was nothing to him. Beeler testified that Chandler threatened him with the box cutter he had used in the liquor cage, but this time it only came within about a foot and a half of Beeler's neck.

David Salo, a CVS cashier, testified he was working at the courtesy booth in the front of the store that day when he saw Beeler and Chandler walk past his register. According to Salo, Beeler and Chandler were "in a heated conversation" and a "confrontation of some type" appeared to be going on. Chandler was trying to get out of the

store and was aggressively pushing Beeler. Salo testified that Beeler "was trying to delay [Chandler] until the police got there." Chandler told Beeler in a threatening way, "Get out of my way," and Beeler said, "No, you're not going." Salo also heard Chandler make some threatening comment like "I'll hurt you." Chandler was gripping something in his hand, which Salo thought was a box cutter.

Salo followed Beeler and Chandler after they left the store, but he did not see Chandler brandish a weapon toward Beeler. Salo saw Beeler come back. Salo then got into his truck and followed Chandler. Salo stopped a police officer and gave information about the incident.

At around 5:00 p.m. that day, after being flagged down by a CVS employee in the vicinity of the CVS store, San Diego Police Officer Kristopher Spencer found Chandler a couple of blocks away. After Chandler started to walk away, Officer Spencer and another officer drew their service weapons and ordered Chandler to stop and get down to the ground. Officer Spencer took Chandler into custody "as a detention" because he fit the description of the suspect. Chandler had a plain black backpack with shoulder straps, which Officer Spencer impounded.

Officer Spencer searched the immediate area and in some small hedges about 15 feet from where Chandler dropped to the ground, the officers found a box cutter with an angled retractable blade and a pair of wire cutters, which were also impounded.

*B. The Defense Case*

Chandler did not testify. Christina Liebelt, the CVS employee who was working in the photo lab of the store on June 3, testified for the defense. She testified that during the incident on that date Beeler told her to call 911. Initially, she thought Beeler was kidding "because he has a dry sense of humor" and makes jokes. Beeler again asked her to call 911 and said something like "[h]e tried to kill me" or "[h]e tried to cut me." This prompted Liebelt to call 911. Liebelt testified she recognized Chandler from a picture she had seen of him. She stated she did not hear Chandler, who was trying to leave the store, make any threats.

San Diego Police Officer Daniel Vaquero testified that he investigated the June 3 incident and interviewed Beeler. Officer Vaquero testified he did not collect any video from the store because "there was no video of the assault in the back cage or in the middle of the store." When asked whether a second alleged attack took place near Liebelt's photo counter, Officer Vaquero replied, "I didn't say that it happened during [sic] the photo counter, sir." At the defense counsel's request, Officer Vaquero refreshed his memory by reading the report he prepared and the indicated that Beeler had told him the second attack took place near the photo counter.

On cross-examination, Officer Vaquero stated that Beeler was upset, red, and shaking when the officer talked to him, and he had to console Beeler by saying, "It's ok. You're okay. You're not hurt, and I know this is hard, but it's good that you're reporting it."

(Dkt. No. 9, Lodgment No. 11 at 4-10.)

## DISCUSSION

### I.    Standard of Review of Magistrate Judge's Report and Recommendation

The district court's duties in connection with a Report of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b).  The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C).  The district court need not review de novo those portions of a Report to which neither party objects.  See Wang v. Masaitis, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); United States v. Reyna-Tapia, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc). When no objections are filed, the Court may assume the correctness of the Magistrate Judge's findings of fact and decide the motion on the applicable law.  Campbell v. U.S. Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

### II.    Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it is a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review set forth in 28 U.S.C. § 2254(d). This standard states that "[an] application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of the State court shall not be granted with respect to any claim unless" the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

### III.    Analysis

Petitioner raises five claims in his Petition.  First, he argues the state court trial judge improperly excluded evidence of Beeler's employment records and the CVS employee manual. Second, Petitioner claims the state trial judge improperly permitted

the prosecution to introduce evidence of "other crimes" he had committed. Third, Petitioner contends the prosecutor committed misconduct. Fourth, Petitioner claims his multiple appointed counsels were ineffective. Lastly, Petitioner argues that the cumulative effect of all of the errors that occurred at his trial rendered it fundamentally unfair. (Dkt. No. 1, Pet. at 6-38.)

### A.    Improper Exclusion of Evidence by the Trial Court

In his first claim, Petitioner contends the state court trial judge prejudicially abused his discretion and deprived him of his constitutional right to present a defense by excluding, under California Evidence Code section 352, evidence of (1) Beeler's employment records regarding his November 2010 termination from another CVS store; and (2) CVS's policy manual on how employees should handle shoplifters, which Petitioner claims would have demonstrated that Beeler was the aggressor and that his testimony was fabricated so that he could keep his job. (Dkt. No. 1, Pet. at 6-15.) Respondent contends that the claim does not state a federal question, and, in the alternative, that the state court's resolution of this claim was neither contrary to, nor an unreasonable application of clearly established Supreme Court law. (Dkt. No. 8 at 29.)

Petitioner raised this claim in the petition for review that he filed in the California Supreme Court. (Dkt. No. 9, Lodgment No. 12 at 16-17.) The California Supreme Court denied the petition without citation of authority. (Dkt. No. 9, Lodgment No. 13.) Accordingly, this Court must "look through" to the opinion of the Court of Appeal as the basis for its analysis. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

The Court of Appeal ruled that the trial court did not abuse its discretion by excluding evidence regarding the termination of Beeler's employment at CVS, six months after the June 3 incident evidence, based on a different incident, as irrelevant under the relevance standard under California Evidence Code section 350 and 210. (Dkt. No. 9, Lodgment No. 11 at 17.)  The court explained that the incident was so dissimilar in nature to the June 3 incident and that Petitioner failed to show that this

1  evidence had any tendency to prove or disprove that Beeler was the aggressor or was
2  angry during the June 3 incident.  (Id. at 17-18.) As to the CVS policy manual, the
3  Court of Appeal stated that while it may have "had a modicum of relevancy on the
4  issue of Beeler's credibility", the error was not prejudicial and did not rise to the level
5  of constitutional error. (Dkt. No. 9, Lodgment No. 11 at 18-19.)  Because the court
6  concluded that the alleged error did not rise to the level of constitutional error, it
7  applied the harmless error standard set forth in People v. Watson, 46 Cal. 2d 818, 836
8  (1956).  (Id. at 22.)  The Court of Appeal concluded the Petitioner failed to meet the
9  burden of showing it is reasonably probable he would have received a more favorable
10 result had the excluded evidence been admitted.  (Id.)

11        In the Report, the Magistrate Judge concluded that Petitioner is not entitled to
12 relief because he alleged state law errors relating to the exclusion of information about
13 Beeler's employment records and the CVS employee manual.    See 28 U.S.C. §
14 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief is not
15 available for alleged violations of state law). The Magistrate Judge also concluded that
16 to the extent Petitioner alleges a constitutional violation, his claim fails.

17        Petitioner objects to the Magistrate Judge's Report arguing that clearly
18 established federal law provides that the right to present evidence and witnesses is
19 essential to due process and guaranteed by the Compulsory Clause of the Sixth
20 Amendment. (Id.) Petitioner claims that the state court's exclusion of defense evidence
21 rendered the proceedings so fundamentally unfair as to violate his right to due process.
22 (Dkt. No. 19 at 4.) Petitioner contends that Beeler's firing was a major part of
23 Petitioner's defense. (Id.) He also argues that the trial court's error was prejudicial and
24 that the exclusion of the CVS manual had a substantial and injurious effect on the
25 jury's verdict. (Id.)

26        Generally, state court evidentiary rulings are not cognizable on habeas review.
27 Estelle, 502 U.S. at 67.  To the extent Petitioner alleges a state law error on an
28 evidentiary ruling, it is without merit.  See id.

[14cv103-GPC(BGS)]

The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (can be rooted in due process clause, compulsory process or confrontation clause). However, there is no requirement that a "defendant must be allowed to put on any evidence he chooses." <u>LaGrand v. Stewart</u>, 133 F.3d 1253, 1266 (9th Cir. 1998). Under the Constitution, well established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by other factors. <u>Moses v. Payne</u>, 555 F.3d 742, 758 (9th Cir. 2008) (quoting <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326 (2006)). A trial court is granted substantial latitude to define rules for the exclusion of evidence and to apply those rules to criminal defendants. <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998). State law rules excluding evidence from criminal trials do not abridge a criminal defendant's right to present a defense unless they are "arbitrary" or "disproportionate to the purposes they were designed to serve" and "infringe[s] upon a weighty interest of the accused." <u>Id.</u> at 308; <u>see</u> <u>Holmes</u>, 547 U.S. at 326. The exclusion of defense evidence is error only if it renders the state proceeding so fundamentally unfair as to violate due process. <u>Estelle</u>, 502 U.S. at 67.

AEDPA established a "highly deferential standard for evaluating state-court rulings." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002) (internal quotations omitted). The Ninth Circuit has noted that the Supreme Court has not "squarely addressed" the specific issue of a trial court's discretionary determination to exclude evidence and the right to present a complete defense. <u>Brown v. Horell</u>, 644 F.3d 969, 983 (2011) (no "controlling legal standard" for evaluating discretionary decision to exclude evidence at issue); <u>Moses v. Payne</u>, 555 F.3d 742, 758 (9th Cir. 2009) (no Supreme Court precedent exists concerning discretionary decisions to exclude evidence so exclusion of expert witness testimony was not contrary to clearly established federal law). Therefore, since the issue has never been addressed by the Supreme Court, there is no clearly established Federal law for purposes of review under AEDPA and a petitioner cannot show that the state court's ruling was either contrary to or an unreasonable

application of clearly established Supreme Court precedent.  See Brown, 644 F.3d at 983; Moses, 555 F.3d at 758, 760; see also Johnson v. Soto, No. 2:12cv2887 MCE DAD P, 2015 WL 1565356, at *40 (E.D. Cal. Apr. 8, 2014); Duarte v. Soto, No. SACV 13-1231-R(JEM), 2015 WL 366125, at *12 (C.D. Cal. Jan. 23, 2015). Similarly, in this case, Petitioner's claim regarding the improper exclusion of evidence by the state trial court cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court precedent.  See Brown, 644 F.3d at 983; Moses, 555 F.3d at 758. Therefore, Petitioner is not entitled to relief on this claim.

Alternatively, even if the Court considered the claim, it is without merit. The Ninth Circuit has identified five factors that should be considered to evaluate whether exclusion of defense evidence violates the constitution: "(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990). The importance of the evidence must then be balanced against the state interest in exclusion. Id. To outweigh the state's strong interest in administration of its trials, the circumstances of the exclusion must be "unusually compelling." Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983). The court must give due weight to the substantial state interest in preserving orderly trials, judicial efficiency, and excluding unreliable or prejudicial evidence. Id.

### 1.   Beeler's Termination

The Court of Appeal concluded that the trial court acted within its broad discretion when it excluded as irrelevant the evidence regarding Beeler's termination, five months after the incident, based on an incident at a different CVS store. (Dkt. No. 9, Lodgment 11 at 17-18.) The court stated that such evidence has no tendency to prove whether Beeler was the aggressor or was angry during the June 3 incident.  (Id. at 18.) Moreover, the Court of Appeal concluded that the trial court demonstrated that Petitioner had a meaningful opportunity to present a complete defense and that

Petitioner failed to meet his burden of showing it is reasonably probable that he would have received a more favorable result had the excluded evidence been admitted. (Dkt. No. 9, Lodgment 11 at 20-22.) The court reasoned that the exclusion of evidence at issue "did not prevent Chandler from presenting other evidence challenging Beeler's credibility and supporting his defense that Beeler was not a credible prosecution witness, and that Beeler was angry and the initial aggressor during the June 3 incident." (Id.)

At trial, defense counsel sought to admit evidence that Beeler was fired from another CVS store around five months after the incident involving Petitioner on June 3. (Dkt. No. 9, Lodgment 2, vol. 1, part 1 at 31). He sought to show that Beeler was the aggressor, violated CVS policy and was not credible.  Beeler was fired from CVS after a customer who complained about service asked for Beeler's identification and he took it off and threw it down on the counter in front of her, telling her that she was not welcome in the store. (Dkt. No. 9, Lodgment 1, vol. 3 at 28.) Defense counsel asked to conduct an Evidence Code section 402 hearing to determine if Beeler had touched the customer during the altercation. Counsel argued such evidence would support Petitioner's claim that Beeler touched Petitioner and physically blocked him from exiting the store. (Id. at 43.) The following day, defense counsel asked the trial court for guidance on whether the circumstances of Beeler's termination from CVS would become relevant, depending on Beeler's testimony. (Id. at 90.) The court reiterated its position that the circumstances regarding Beeler's CVS termination were irrelevant, but also added that if Beeler were to testify in contradiction to the facts surrounding his termination, the evidence might come in as impeachment. (Id. at 91-92.)

The first Tinsley factor, whether the excluded evidence was probative on the central issue, does not weigh in favor of Petitioner. To prove that Petitioner committed burglary, the prosecution had to show that he entered the CVS store with the intent of committing theft.  See Cal. Penal Code § 459; (Dkt No. 9, Lodgment No. 2, vol. 1, part 1 at 78.) To prove that Petitioner committed an assault with a deadly weapon, the

[14cv103-GPC(BGS)]

prosecution had to prove that he willfully committed an act with a deadly weapon other than a firearm, which by its nature would directly and probably result in the application of force to a person, and he had the present ability to apply force with a the deadly weapon. (Dkt No. 9, Lodgment No. 2, vol. 1, part 1 at 82.) Thus, the central issue in this case with regard to the burglary charge was intent. For the assault charges, the central issue was Beeler's credibility, since Petitioner asserted that Beeler was the aggressor and that an assault occurred in the liquor cage. The fact that Beeler was fired from CVS five months after his incident with Petitioner was not probative of either Petitioner's intent or Beeler's credibility. Therefore, this first factor weighs against Petitioner. See Tinsley, 895 F.2d at 530. Factors two and three, however, weigh in favor of Petitioner, as evidence of Beeler's termination by CVS was both reliable and capable of evaluation by the jury. See id.

The fourth Tinsley factor, as to whether excluded evidence was the sole evidence or merely cumulative, is not applicable since the firing of Beeler five months after the incident with Petitioner had no relevance either to Petitioner's intent to commit theft or Beeler's credibility. See id. Furthermore, Petitioner's defense counsel thoroughly cross examined Beeler about his actions toward Petitioner and even impeached Beeler on several inconsistencies. (Dkt. No. 9, Lodgment No. 1, vol. 2 at 225-60, 266-69.) On direct examination, defense counsel asked Liebelt, a CVS employee who was working at the CVS photo booth on the day of the incident, to describe what she observed during the incident between Petitioner and Beeler. (Id.) Liebelt testified that Beeler was walking in front of Petitioner, with his hands up to block Petitioner from leaving the store. (Dkt. No. 9, Lodgment 1, vol. 4 at 378.) David Salo, another CVS employee, also testified that Beeler got around Petitioner so that he could block Petitioner from getting out of the store. (Id. at 291.) Based on the evidence challenging Beeler's credibility, the jury acquitted Petitioner of counts two and four, the assault with a deadly weapon and criminal threat charges.

Last, with regards to the fifth Tinsley factor, Beeler's firing did not constitute a

major part of Petitioner's defense. Petitioner sought to convince the jury that he had no intentions of burglarizing the CVS store and that he did not threaten or assault Beeler with the box cutter. Beeler's termination from CVS five months later may have had probative value in regards to Beeler's temper, yet it did not shed significant light on Petitioner's defense.

For the forgoing reasons, the <u>Tinsley</u> factors weigh against the admission of Beeler's employment records and their exclusion did not violate Petitioner's due process rights.

### 2.    The CVS Employee Manual

Petitioner also sought to admit evidence that Beeler's actions violated the CVS employee manual when he followed Petitioner out of the store. Petitioner contends that the CVS employee manual is relevant to his defense because it showed that Beeler lied about the incident with Petitioner so that he could keep his job.

The CVS employee manual states that an employee must not "pursue or chase a fleeing shoplifter" and pursuit "beyond the entrance/exit of a store will not be tolerated, and may result in disciplinary action up to and including termination." (Dkt. No. 9, Lodgment 2 vol. 1 at 34.) Petitioner asserts that the CVS employee manual would have impeached Beeler's credibility as to what happened in the liquor cage and whether Beeler lied about Petitioner assaulting or threatening him, and the state appellate court noted that "the evidence of the CVS policy manual may have had a modicum of relevancy on the issue of Beeler's credibility." (Dkt. No. 9, Lodgment 11 at 17.) However, the state appellate court also found that the trial court's error did not deprive Petitioner of his ability to present a defense. (<u>Id.</u>) The Court of Appeal concluded that the trial court's exclusion of  evidence at issue did not prevent Petitioner from presenting other evidence that, just as effectively, challenged Beeler's credibility and supported his defense that Beeler was not a credible prosecution witness and that he was the initial aggressor during his June 3 incident with Petitioner. (<u>Id.</u> at 19.)

[14cv103-GPC(BGS)]

As to the first Tinsley factor, the CVS policy manual had no probative value on the central issue of Petitioner's intent to burglarize CVS. On the other hand, however, the manual had some probative value on the central issue of Petitioner's defense to the other charges, such as Beeler's credibility. Petitioner argued that Beeler had lied to Officer Vaquero following the incident, when he told him that Petitioner attacked him for a second time while inside of the store. (Lodgment No. 1, vol. 2 at 243.) During cross examination of Beeler, defense counsel reminded him that following the incident he told the responding police officer Petitioner had attacked him once while he was inside the liquor cage, and a second time when he was near the photo counter inside of the store. (Dkt. No. 9, Lodgment 1 vol. 3 at 35.) Beeler also had said that he did not go past the CVS exit door, and specifically did not go to the parking lot. (Id. at 172.) Contradicting himself, Beeler later testified at trial that the second attack took place in the parking lot. (Dkt. No. 9, Lodgment 1 vol. 3, at 214-17.) Therefore, the first Tinsley factor is satisfied. See Tinsley, 895 F.2d at 530. The second and third Tinsley factors are also satisfied because this evidence was reliable and capable of being evaluated by the jury. Id.

Applying the fourth Tinsley factor, however, the CVS employee manual was not the sole evidence on the question of Beeler's credibility. Defense counsel was given sufficient opportunity to thoroughly cross examine Beeler about his initial statements to the responding police officer and point out the inconsistencies in those statements with Beeler's testimony at trial. (Dkt. No. 9, Lodgment No. 1, vol. 3 at 223-60, 266-69.) Defense counsel also questioned the responding police officer, Vaquero, about Beeler's initial statements following the incident, and Vaquero testified that Beeler had told him that the second attack took place inside of the CVS store near the photo booth. (Dkt. No. 9, Lodgment No. 1, vol. 4 at 365.) Specifically, when asked if Beeler had told him that the second attack took place near the photo counter inside of the store, Vaquero responded in the affirmative. (Id.) When defense counsel asked Vaquero if Beeler had told him "that he was afraid for his life and he stopped following

[14cv103-GPC(BGS)]

[Petitioner] as he exited the front door, as [Petitioner] exited the front door," Vaquero responded in the affirmative. (Id. at 371.)

Furthermore, although Beeler testified at trial that he did not touch Petitioner or try to physically prevent him from exiting the store, Liebelt testified that Beeler put his hands up in front of Petitioner to block him from leaving, as Petitioner walked towards the store's exit. (Dkt No. 9, Lodgment 1, vol. 4 at 378.) This contradicts Beeler's statement that Petitioner had threatened to kill him as they exited the store. (Dkt. No. 9, Lodgment No. 1, vol. 3 at 214.) David Salo, another CVS employee, also testified that Beeler got around Petitioner so that he could block Petitioner from getting out of the store. (Id. at 291.) At closing, defense counsel argued vigorously that Beeler was lying about the incident with Petitioner, attempting to look like the victim when he was in fact the aggressor. (Dkt. No. 9, Lodgment No. 1, vol. 4 at 471-82.) For these reasons, the fourth Tinsley factor weighs against Petitioner. See Tinsley, 895 F.2d at 530.

Lastly, regarding the fifth Tinsley factor, although Beeler's credibility constituted a major part of Petitioner's defense, the CVS employee manual was a minor part of that defense. Id. The record of the trial court demonstrated that the inconsistencies between Beeler's initial statements to police and his testimony at trial, along with Liebolt, Vaquero, and Salo's testimonies, show that Petitioner was able to discredit Beeler without needing to use the CVS employee manual. In fact, the CVS manual would have only further impeached Beeler's credibility. Therefore, on the whole, because the CVS employee manual did not constitute a major part of Petitioner's defense, the fifth Tinsley factor weighs against Petitioner.

While the Tinsley factors may weigh in favor of Petitioner, the Court must next look at whether the exclusion of the CVS manual had a "substantial and injurious effect or influence on the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 637 (1993). As discussed above, the defense was able to impeach Beeler's credibility which is reflected in the jury's verdict where they acquitted Petitioner of assaulting Beeler with a deadly weapon in the CVS parking lot and issuing a criminal threat to

1   Beeler.  Any further evidence to impeach Beeler's credibility would not have altered

2   the jury's verdict.  For the foregoing reasons, this Court concludes that the state court's

3   denial of Petitioner's first claim did not render Petitioner's trial fundamentally unfair.

4   See Estelle, 502 U.S. at 67.

5                    **B.    Admission of "Other Crimes" Evidence**

6          In his second claim, Petitioner alleges the trial court improperly permitted the

7   prosecution to introduce evidence of another uncharged crime concerning a 2009 theft

8   incident at Vons. (Dkt. No. 1 at 16-25.) Petitioner argues that the "other crimes"

9   evidence was more prejudicial than probative and deprived him of his right to due

10  process and a fair trial. (Id.) Respondent contends that this claim does not state a

11  federal question and that the court of appeal found no error in the admission of the

12  evidence under California law. (Dkt. No. 8 at 37.)

13         The Court of Appeal upheld the trial judge's decision, finding that the court did

14  not abuse its discretion under California Evidence Code sections 1101 and 352. (Dkt.

15  No. 9, Lodgment 11 at 30.) The court reasoned that Petitioner failed to meet his burden

16  of showing that the probative value of the evidence of the 2009 theft incident was

17  substantially outweighed by the probability that its admission would create danger of

18  undue prejudice. (Id.) The court noted that substantial evidence showed that the May

19  18 and June 3 incidents at CVS shared a number of distinctive similarities with the

20  2009 Vons theft such as Petitioner targeted commercial retail businesses, used a large

21  bag in a remote area of the store, and had intent to commit theft. (Id.) The CVS incident

22  also occurred near the 2009 Vons theft, within a year's time period. (Id.) The court

23  concluded that these similarities were sufficient to support the trial court's decision to

24  admit the other crimes evidence of the 2009 theft, and that the prior incidents proved

25  the specific intent elements of the burglary and grand theft offenses. (Id.)

26         In the Report, the Magistrate Judge concluded that Petitioner was not entitled to

27  federal habeas corpus relief for this claim because the challenged evidence did not

28  prejudice Petitioner's trial to the degree of making it fundamentally unfair. (Dkt. No.

18 at 21.) The Magistrate Judge also concluded that since there is no clearly established Supreme Court Law on whether evidence of other crimes is admissible or violates due process, the state court's ruling cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court law. (Id.)

Petitioner objects to the Report alleging that the jury did not follow the court's instructions concerning the other crimes evidence, and that the admission of the other crimes violated his due process rights and rendered his trial fundamentally unfair. (Dkt. No. 19 at 6-7.) Petitioner also claims that the previous uncharged crimes did not resemble the charges in the present case, because he was charged with stealing different items. (Id. at 6.)

Petitioner's claim concerns the admission of evidence which is an issue of state law and cannot be subject to relief in a federal habeas petition. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions.").

Moreover, Petitioner's constitutional claim concerning the admission of other crimes evidence cannot be subject to AEDPA because there is no clearly established Supreme Court law on this issue. Where there is no clearly established Supreme Court law, a state court's denial of a claim cannot be said to be contrary or an unreasonable application of clearly established Supreme Court law. Carey v. Musladin, 549 U.S. 70, 75, 76-77 (2006). The Ninth Circuit has acknowledged that the Supreme Court has not addressed the issue of whether admission of irrelevant or overly prejudicial evidence renders a trial fundamentally unfair. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (even though the trial court's admission of evidence resulted in a trial that was fundamentally unfair and would warrant issuance of the writ under Ninth Circuit precedent, issuance of writ was not possible since Supreme Court had not made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ). Therefore, even if the evidence was improperly admitted, the claim would not be grounds for relief. See id.

[14cv103-GPC(BGS)]

Moreover, the "Supreme Court has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without [a limiting instruction]." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), rev'd on other grounds, 538 U.S. 202(2003); Alberni v. McDaniel, 458 F.3d 860, 863-64 (9th Cir. 2006). In fact, the Supreme Court expressly declined to decide the issue of whether the admission of prior crimes evidence to show propensity to commit a charged crime violates the Due Process clause. Estelle, 502 U.S. at 75 n. 5. "[W]hen the Supreme Court has expressly reserved consideration of an issue, as it has here, the petitioner cannot rely on circuit authority to demonstrate that the right he or she seeks to vindicate is clearly established." Alberni, 458 F.3d at 864; Saleh v. Fleming, 262 F. App'x 802, 804 (9th Cir. 2008) (no AEDPA relief because Supreme Court has expressly reserved consideration of the issue); Munoz v. Gonzales, 596 F. App'x 588, 589 (9th Cir. 2015); Carrillo v. McDonald, No. 1:12cv1203-JLT, 2015 WL 1746550, at *33-34 (E.D. Cal. Apr. 16, 2015).  Accordingly, AEDPA relief is not available on this claim.

## C.  Prosecutorial Misconduct

In his third claim, Petitioner contends the prosecutor at trial committed misconduct by its "failure to disclose Brady evidence in possession of investigative agencies" and "knowingly allowing exculpatory evidence to be destroyed in bad faith and misrepresentation." (Dkt. No. 1 at 26.) Specifically, Petitioner alleges the prosecutor knew that the store surveillance video contained exculpatory evidence, misrepresented the existence and contents of such video, and failed to preserve that evidence. (Id. at 26-32.) Respondent argues that there is no authority for the proposition that the prosecution must go out and obtain evidence on behalf of a defendant, and that the Due Process Clause only requires law enforcement to preserve exculpatory evidence that is already in their possession. (Dkt. No. 8 at 46.) Respondent also argues that Petitioner has failed to show that the police acted in bad faith in

allegedly destroying the evidence that had exculpatory value.

In the Report, the Magistrate Judge concluded that Petitioner did not establish that the video surveillance had any exculpatory value that was apparent before the evidence was destroyed, nor did he establish that the failure to preserve the surveillance tape was due to bad faith on the part of the police. (Dkt. No. 18 at 27.) Petitioner objected to the Magistrate Judge's Report, claiming as he did in his petition, that the prosecutor failed to disclose exculpatory evidence in the possession of state investigative agencies and knowingly allowed exculpatory evidence to be destroyed in bad faith. (Dkt. No. 19 at 8.)

First, the Magistrate Judge noted that it is not clear that this claim is exhausted. Petitioner did not raise this specific claim in the petition for review that he filed in the California Supreme Court. In the petition for review, Petitioner merely states, "[P]etitioner asserted 23 claims in his habeas corpus petition . . . [and] adopts the statement presented in the Court of Appeal's decision for purposes of this petition." (Dkt. No. 9, Lodgment 12 at 34.) Respondent did not argue that this claim is unexhausted.

AEDPA provides that a writ of habeas corpus may be denied where the applicant failed "to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A federal court may deny an unexhausted claim on the merits where "it is perfectly clear that the applicant does not raise even a colorable federal claim." Granberry v. Greer, 481 U.S. 129, 135 (1987); Cassett v. Stewart, 406 F. 3d 614, 624 (2005) (holding that the Ninth Circuit adopts the Granberry standard). Since Petitioner's claim of prosecutorial misconduct does not raise a colorable federal claim, the Court addresses the merits of the claim.

When it is clear that the state court has not decided an issue, review by the federal court is de novo. Rompilla v. Beard, 434 U.S. 374, 390 (2005); see also Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004); Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006) ("[w]hen it is clear, however, that the state court has not decided

1   an issue, we review that question de novo").

2       Petitioner alleges that the prosecution failed to disclose Brady evidence in
3   possession of investigative agencies.  Respondent denies it was in possession of the
4   video and denies that it failed to disclose <u>Brady</u> evidence.  A prosecutor's failure to
5   disclose favorable evidence to an accused "violates due process where the evidence is
6   material either to guilt or to punishment, irrespective of the good faith or bad faith of
7   the prosecution."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  To establish that the
8   government's failure to turn over evidence violates <u>Brady</u>, Petitioner must demonstrate
9   (1) the evidence was suppressed by the government either willfully or inadvertently;
10  (2) the evidence was favorable to the accused because it was either exculpatory or
11  impeaching; and (3) prejudice resulted from the failure to disclose.  <u>See</u> <u>Strickler v.</u>
12  <u>Greene</u>, 527 U.S. 263, 280-81 (1999). In addition, <u>Trombetta</u> held that the
13  government's bad faith destruction of, or failure to preserve, potentially exculpatory
14  evidence violates due process.  <u>California v. Trombetta</u>, 467 U.S. 479, 489 (1984).  In
15  addition, under <u>Trombetta</u>, the evidence must be of a nature that the defendant would
16  be unable to obtain comparable evidence by other reasonably available means.  <u>Id.</u>

17      Petitioner has not shown that the prosecution suppressed or failed to disclose the
18  existence of the June 3rd CVS surveillance tape.  While the prosecution made efforts
19  to obtain the video, they were informed that no tape existed as it was taped over. (Dkt.
20  No. 9, Lodgment No. 1, vol. 3 at 68-69.)  On June 3rd, Police Officer Vaquero viewed
21  the video and reported that he did not see any video of the defendant entering or exiting
22  the store and that the video only shows the cash registers and the entryway. (<u>Id.</u> at 63.)
23  Since there was nothing of significant on the video, he wrote, "None" on the police
24  report. (Id. at 65.) While a factual dispute was raised as to whether the video shows
25  defendant entering and exiting, (<u>id.</u> at 64-65), the CVS surveillance tape did not contain
26  any exculpatory evidence since the surveillance tape did not capture the liquor case
27  area where the assault occurred and only captured the checkstands, the customer
28  service booth, the two entrances to the store and two views of the sales floor.

(Lodgment No. 1, vol. 2 at 159-60.)

As to the June 3 incident, Petitioner was convicted of assaulting Beeler with a deadly weapon in the liquor cage area and burglarizing the CVS store, and both charges alleged that Petitioner personally used a deadly weapon. (Dkt No. 9, Lodgment No. 2 at 9-11.) Petitioner was acquitted of the second assault on Beeler outside of the CVS store and for making a criminal threat. (Id. at 214-19.) The video surveillance of the May 18 incident at the same store shows the angles from the video surveillance cameras inside of CVS were limited to the check stands, the two entrances to the store, the customer service booth, and two views of the sales floor. (Dkt. No. 9, Lodgment No. 1, vol. 3 at 145-46.) Thus, the record establishes that there was no video surveillance of the liquor cage area where Petitioner's assault on Beeler occurred. Therefore, any available video surveillance could not have aided Petitioner's defense regarding the assault.  With regards to the burglary charge, the Respondent was required to prove that Petitioner entered the CVS store with an intent to commit theft, yet Petitioner's Objection fails to address how the surveillance video would have shed light on his intent. (See Dkt. No. 19 at 8-14.) Thus, Petitioner has failed to demonstrate that the prosecution withheld evidence that was exculpatory.

Next, Petitioner argues that the prosecution knowingly allowed exculpatory evidence to be destroyed in bad faith. First, since the prosecution or the police never had the video in their possession, then Trombetta is inapplicable. See Miller v. Vasquez, 868 F.2d 1116, 1119 (9th Cir. 1989) (Trombetta did not impose a duty to obtain evidence but to preserve evidence that is in possession of the police). Furthermore, Petitioner has failed to meet the requirement of Trombetta, by showing that he was unable to obtain comparable evidence by other reasonable means. See Trombetta, 467 U.S. at 489. As the Court of Appeals noted, "defense counsel repeatedly attacked Beeler's credibility and his account of the incident . . . [Petitioner's] counsel pointedly argued to the jury that 'Beeler is not credible.'" (Dkt. No. 9, Lodgment No. 11 at 21.) Evidence shows that the video, if it existed, would not

have been able to assist Petitioner in his defense any more than that of the testimony of prosecution and defense witnesses, Salo and Liebolt. Salo testified that he saw something in Petitioner's hand, which he thought was a box cutter, while Petitioner and Beeler were walking towards the store exit. (Dkt. No. 9, Lodgment No. 1, vol. 3 at 283.) Another police officer, Kristopher Spencer, also testified that on June 3 he searched the area immediate to where he found Petitioner, and found a "five- to six-inch metal gray box cutter and a pair of wire cutters." (Dkt. No. 9, Lodgment No. 1, vol. 4 at 33.) The box cutter was located about twenty feet from where Petitioner was detained. (Dkt. No. 9, Lodgment No. 2, vol. 1 Part 2 at 37.)

For the forgoing reasons, Petitioner has not established that the video surveillance tapes of the June 3 incident were material to his defense. Petitioner was able to obtain comparable evidence, through eye witness testimony, to both impeach Beeler's testimony and show that Beeler was aggressive towards him. Petitioner has failed to establish a <u>Brady</u> or <u>Trombetta</u> violation and is not entitled to relief as to this claim.

## D.    Ineffective Assistance of Counsel

In his fourth claim, Petitioner contends his multiple appointed lawyers were ineffective by failing to conduct a reasonable pre-trial investigation of obtaining the June 3 CVS video surveillance tape, and that his trial counsel had a conflict of interest because Petitioner's previous attorneys worked with the Alternate Public Defenders Office. (Dkt. No. 1 at 33-37.) Petitioner also claims that trial counsel failed to object to the prosecutor presenting perjured testimony by Beeler. (<u>Id.</u>) Respondent argues that the California Court of Appeal rejected this claim because it failed to set forth a prima facie claim for relief. (Dkt. No. 8 at 51.) Respondent also contends that Petitioner makes the unproven assumption that the store video surveillance for the June 3 incident was in fact exculpatory. (<u>Id.</u> at 53.)

The Report concluded that Petitioner is not entitled to relief because he failed to raise a colorable federal claim. (Dkt. 18 at 27.) The Report also concluded that

Petitioner failed to  show he was prejudiced by his counsels' failure to obtain the video surveillance tape and failed to show that the trial court's outcome would have been different, but for the errors of his counsels. (Dkt No. 18 at 29.) The Magistrate Judge also concluded that Petitioner's conflict of interest claim was merely conclusory, as Petitioner failed to state what investigation, apart from obtaining the video surveillance tape, that his previous counsels should have performed, and how possible evidence of that would assist him in his defense. (Dkt. No. 19 at 29.)

Petitioner objected to the Magistrate Judge's report stating that his court appointed counsel fell well below an objective standard of reasonableness because they failed to secure the video surveillance tape, which denied Petitioner a fair trial. (Dkt. No. 19 at 15.)

It is not clear to this Court that Petitioner's ineffective assistance of counsel claims are exhausted, as he did not explicitly raise them in a petition for review that he filed in the California Supreme Court. (Dkt. No. 9, Lodgment 16 at 28.) However, Respondent does not contend the claim is unexhausted. (See Dkt. No. 8 at 36-42.) Regardless, the Court may deny the petition if it is "perfectly clear that the applicant does not raise even a colorable federal claim." Cassett, 406 F.3d at 624.

A petitioner claiming ineffective assistance of counsel must first show that counsel's representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984). The proper measure of attorney performance depends on the reasonableness under prevailing professional norms, considering all of the circumstances. Id. The purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, but rather to "ensure that criminal defendants receive a fair trial." Id. at 689. A convicted defendant must meet the two-pronged Strickland test, showing: (1) counsel's performance was deficient and made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment; and (2) the deficient performance prejudiced the defense, and counsel's errors were so serious as to deprive the defendant

of a fair trial, whose result is reliable. Id. at 687. The defendant must show that but for the unprofessional errors of counsel, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694. If the defendant makes an insufficient showing on one prong of the Strickland test, the Court need not further address the second prong. Id. at 697.

### 1.    Failure to Obtain the June 3 CVS Video Surveillance Tape

In Petitioner's objection, he recites the same arguments raised in his Petition. (Dkt. No. 19 at 15-20; Dkt. No. 1 at 33-37.)  Even if Petitioner's counsel should have obtained the CVS video surveillance tape, Petitioner has not shown that his counsel's failure to obtain the video surveillance tape from the June 3 incident was so serious that he was deprived a fair trial. See Strickland, 466 U.S. at 687.  The Magistrate Judge correctly concluded that the record shows that CVS did not have video cameras recording the liquor cage area where the incident took place, and the videos would not have exonerated him of the June 3 burglary charge.

Furthermore, as previously mentioned, Petitioner was not prejudiced because he was able to use the testimony of eyewitnesses Liebolt, Salo, and even Beeler, to prove his point that Beeler was also the aggressor. Thus, there was nothing new from the video surveillance tapes that would have aided Petitioner's defense that eyewitness testimony did not already mention. Petitioner's trial counsel, Gaylord Stewart, provided Petitioner a rigorous defense, by thoroughly cross examining Beeler and Salo, and impeaching Beeler on his inconsistencies. Stewart also direct examined Liebolt, who explained what she observed. As a result of these testimonies, Petitioner was acquitted of assault with a deadly weapon and criminal threat charges. Regarding the weapons enhancements, there was other evidence, such as Salo's testimony and the testimony of officer Spencer, who found a box cutter close to where Petitioner was arrested, supporting the jury's conclusion that Petitioner was armed with a box cutter during the June 3 incident. (Dkt. No. 9, Lodgment No. 1, vol. 4 at 33.) Therefore, Petitioner has not shown that there was a reasonable probability that the result would have been

1  different.

2         **2.    Conflict of Interest**

3      Petitioner also argues that his trial counsel, Stewart, had a conflict of interest that

4  compromised his defense because he worked with Petitioner's previous appointed

5  attorneys. (Dkt. No. 1 at 36.) Petitioner claims that this conflict of interest has

6  compromised his defense in that his counsel failed to argue that Petitioner's previous

7  attorneys did not properly conduct a pre-trial investigation. (Id.)

8      As the Magistrate properly noted, Petitioner's claim is conclusory. He does not

9  provide any evidence to support his contention that there was a conflict of interest

10  between his counsel and previous appointed attorneys. It is well established that

11  conclusory allegations, unsupported by a statement of specific facts, do not warrant

12  habeas corpus relief. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Therefore,

13  Petitioner is not entitled to relief as to this allegation.

14         **3.    Failure to Object to Prosecutorial Misconduct**

15      Third, Petitioner claims ineffective assistance of counsel by his counsel's failure

16  to object to the prosecution's use of the "perjured testimony" of Beeler. (Dkt. No. 1 at

17  33-37.) A prosecutor commits misconduct when (1) she presents evidence that was

18  "actually false" (2) she knew or should have known that the testimony was actually

19  false, and (3) the false testimony was material. United States v. Zuno-Arce, 339 F.3d

20  886, 889 (9th Cir. 2003) (citing Napue v. People of the State of Illinois, 360 U.S. 264,

21  269-71 (1959)). A prosecutor "can never guarantee that a witness will not commit

22  perjury. Her duty is to refrain from knowingly presenting perjured testimony." United

23  States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991) (citing United States v. Endicott,

24  869 F.2d 452, 455 (9th Cir. 1989) (internal quotation marks and citations omitted)).

25  When there are two conflicting versions of an incident that are presented to the jury,

26  it is within the province of the jury to resolve the disputed testimony. United States v.

27  Awkward, 597 F.2d 667, 671 (9th Cir. 1979).

28      Here, the alleged perjured testimony of Beeler is a conflicting version of event

between Beeler's memory of what happened, and the testimony of eyewitnesses, Liebolt and Salo. The prosecutor did not present evidence that was "actually false" because she was relying on Beeler's testimony. Petitioner has not shown that the prosecutor knew or should have known that the testimony was actually false. The record shows that details in Beeler's testimony changed, from the date of the incident in his statement to Officer Vaquero, to the testimony he gave at the preliminary hearing. (Dkt. No. 9, Lodgment 1, vol. 3 at 21-22.) However, although Beeler presented conflicting versions of what happened between him and Petitioner, it was the jury's responsibility to resolve the disputed testimony. See Awkward, 597 F.2d at 671.

Petitioner's argument that his trial counsel should have objected to the prosecutor's use of the perjured testimony of Beeler is without merit because the record shows that trial counsel impeached Beeler's credibility by pointing out Beeler's change in testimony. (Dkt. No. 9, Lodgment 1, vol. 3 at 21-22.)

Therefore, Petitioner has failed to show either that his trial counsel's performance was deficient or even if there was error, that the errors deprived him of a fair trial. See Strickland, 466 U.S. at 687. The record shows that Petitioner's counsel presented a rigorous defense by impeaching Beeler's testimony, and professionally and competently defended Petitioner at trial. For these reasons, Petitioner is not entitled to relief under this claim.

### E.   Cumulative Error

In his fifth claim, Petitioner contends the cumulative effect of the errors committed at his trial denied him the right to a fair trial. (Dkt. No. 1 at 38.) Respondent counters that because the California Court of Appeal found only one error but that it was harmless nonetheless, there is nothing to accumulate. (Dkt. No. 8 at 54.) The Court of Appeal agreed with Respondent, concluding that Petitioner failed to meet his burden of showing any cumulative errors or prejudice sufficient to reverse any of his convictions. (Dkt. No. 9, Lodgment 11 at 37.) The Magistrate Judge concluded that any error did not rise to the level of a Constitutional violation of Petitioner's rights. (Dkt

No. 18 at 32.) Petitioner objected to the Magistrate's Report, repeating the exact same arguments in his petition. (Dkt. No. 19 at 21; Dkt. No. 1 at 38.)

The Supreme Court has clearly established that the effect of a combination of multiple trial court errors violates due process "where it renders the resulting criminal trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298 (1973)). The cumulative effect of multiple errors can violate due process where no single error rises to the level of constitutional violation. Parle, 505 F.3d at 927. Cumulative error warrants habeas relief only when the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Such "infection" takes place when the combined effect of errors had a "substantial and injurious effect or influence on the jury's verdict." Brecht, 507 U.S. at 637.

Here, the Court of Appeal only assumed error on Petitioner's claim concerning the exclusion of the CVS manual but concluded that the error was harmless. Moreover, this Court denied Petitioner's relief on his unexhausted claims. Therefore, Petitioner did not suffer the effect of multiple trial court errors, and thus, there are no errors to aggregate. Although Petitioner argues that "the combined effect of errors prevented [him] from challenging Beeler's credibility in a case that hinged on the jury's assessment of credibility," the record states otherwise. (Dkt. No 1 at 38; Dkt. No. 19 at 21.) As noted above, the record points to many instances where Petitioner's defense counsel impeached Beeler's testimony, both through cross examination of Beeler and Salo, and direct examination of Liebolt. In fact, as a result of these testimonies, Beeler's credibility was impeached and Petitioner was acquitted of assault with a deadly weapon and criminal threat charges. (Dkt. No. 9, Lodgment 2, vol. 1 part 2 at 105-09.) Accordingly, Petitioner's right to due process was not violated and he is not entitled to relief for his cumulative error claim.

## IV. Certificate of Appealability

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a

1  habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).
2  The district court may issue a certificate of appealability if the petitioner has made a
3  substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To
4  satisfy this standard, a petitioner must show that "reasonable jurists would find the
5  district court's assessment of the constitutional claims debatable or wrong." <u>Slack v.</u>
6  <u>McDaniel</u>, 529 U.S. 473, 484 (2000).  In this case, Petitioner has not made a substantial
7  showing of the denial of a constitutional right. Accordingly, the Court DENIES a
8  certificate of appealability.

9                                                    **CONCLUSION**

10         Based on the above, the Court OVERRULES Petitioner's objections and
11  ADOPTS the Report and Recommendation in its  entirety and DENIES the Petition for
12  Writ for Habeas Corpus.  The Court also DENIES a certificate of appealability.

13         IT IS SO ORDERED.

14

15  DATED:  June 3, 2015

16                                     _____
17                                     HON. GONZALO P. CURIEL
                                       United States District Judge

18

19

20

21

22

23

24

25

26

27

28